IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JUNIOR VOLLEYBALL ASSOCIATION OF AUSTIN d/b/a AUSTIN SPORTS CENTER, and AUSTIN SPORTS CENTER, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Cause No. 1:17-cv-00756-LY |
| SUMMIT HOSTING LLC, f/k/a SOFTWARE LINK HOSTING, LLC f/k/a SOFTWARE LINK, INC., | § § § § | |
| Defendants. | § § | |

## DEFENDANT'S MOTION TO DISMISS AND OPENING BRIEF IN SUPPORT

Elizabeth C. Brandon
BARNES & THORNBURG LLP
2100 McKinney Ave., Ste. 1250
Dallas, Texas 75201
Telephone: (214) 258-4200
Facsimile: (214) 258-4199

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

NATURE AND STAGE OF PROCEEDINGS ........................................................................5

ARGUMENTS AND AUTHORITIES ....................................................................................5

I.  Applicable Standard of Review. ....................................................................................5

II.  ASC'S Breach of Contract Claim Must Be Dismissed Because ASC Agreed To a Limitation of Liability Provision. ...........................................................................6

III.  ASC's Attempt to Plead Around the Agreement It Signed and Business Deal It Made Must Be Rejected....................................................................................7

    A.  The Economic Loss Rule Bars ASC's Tort Claims...................................................8

    B.  ASC Fails to Adequately Plead Its Tort Claims Against Software Link................9

        1.  ASC fails to adequately plead gross negligence. ......................................10

        2.  ASC fails to adequately plead grossly negligent hiring and supervision. ................................................................................................10

        3.  ASC fails to adequately plead its fradulent inducment claim...................12

            a.  ASC's pleading does not comply with Rule 9(b). .........................13

            b.  ASC fails to plead facts showing Mr. Kania's alleged representation was false. ...........................................................14

            c.  ASC cannot claim a failure to perform under the Agreement constitutes fraud. ........................................................15

    C.  ASC's Fails To State a DTPA Claim Against Software Link. ............................16

IV.  ASC is Not Entitled To Recover Its Attorneys' Fees. ....................................................19

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Eagle Ins. Co. v. United Techs. Corp.*,
 48 F.3d 142 (5th Cir. 1995) ...................................................................................9

*Amstadt v. United States Brass Corp.*,
 919 S.W.2d 644 (Tex. 1996) .................................................................................16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..........................................................................................6, 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...............................................................................................5

*Berry v. Indianapolis Life Ins. Co.*,
 608 F. Supp. 2d 785 (N.D. Tex. 2009) .................................................................17

*Biliouris v. Sundance Res., Inc.*,
 559 F. Supp. 2d 733 (N.D. Tex. 2008) .................................................................13

*Carson Energy, Inc. v. Riverway, Bank*,
 100 S.W.3d 591 (Tex. App.—Texarkana 2003, pet. denied) ..................................9

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
 445 S.W.3d 716 (Tex. 2014) ..................................................................................8

*Collins v. Morgan Stanley Dean Witter*,
 224 F.3d 496 (5th Cir.2000) ...................................................................................3

*Crawford v. Ace Sign, Inc.*,
 917 S.W.2d 12 (Tex. 1996)........................................................................17, 18, 19

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*,
 823 S.W.2d 591 (Tex. 1992).................................................................................16

*DeWitt Cnty. Elec. Co-op., Inc. v. Parks*,
 1 S.W.3d 96 (Tex. 1999).........................................................................................9

*Doe v. Boys Clubs of Greater Dall., Inc.*,
 907 S.W.2d 472 (Tex.1995)...................................................................................16

*Dura-Wood Treating Co. v. Century Forest Industries, Inc.*,
 675 F.2d 745 (5th Cir. 1982) ................................................................................18

*Farina v. Southwestern Bell Media, Inc.*,
   658 F. Supp. 826 (S.D. Tex. 1987) ..................................................................18

*Flaherty & Crumrine Stockman v. TXU Corp.*,
   565 F.3d 200 (5th Cir. 2009) ........................................................................13

*Floyd v. CIBC World Markets, Inc.*,
   426 B.R. 622 (S.D. Tex. 2009) ......................................................................13

*Frith v. Guardian Life Ins. Co. of Am.*,
   9 F. Supp. 2d 734 (S.D. Tex. 1998) ..............................................................17

*GMAC Commercial Mortgage Corp. v. E. Texas Holdings, Inc.*,
   441 F. Supp. 2d 801 (E.D. Tex. 2006) ..........................................................13

*Guillory v. Seaton, LLC*,
   470 S.W.3d 237 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).....................12

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
   634 F.3d 787 (5th Cir.2011) .........................................................................15

*Helms v. Southwestern Bell Tel. Co.*,
   794 F.2d 188 (5th Cir. 1986) ........................................................................18

*Hininger v. Case Corp.*,
   23 F.3d 124 (5th Cir. 1994) ............................................................................9

*Holloway v. Dannenmaier*,
   581 S.W.2d 765 (Tex. Civ. App.—Fort Worth 1979, writ dism'd)........................18

*Kim v. Stanley Convergent Sec. Solutions, Inc.*,
   2013 WL 1715789 (N.D. Tex. Apr.19, 2013) ...................................................7

*Knife River Corp.-S. v. Hinojosa*,
   438 S.W.3d 625 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) .......................12

*Lone Star Ladies inv. Club v. Schlotzsky's Inc.*,
   238 F. 363 (5th Cir. 2001) ...........................................................................17

*Mackey v. U.P. Enterprises, Inc.*,
   935 S.W.2d 446 (Tex. App.—Tyler 1996, no writ)............................................11

*Miles v. Melrose*,
   882 F.2d 976 (5th Cir. 1989) ........................................................................10

*Rhodes v. Prince*,
   360 F. App'x 555 (5th Cir. 2010) ....................................................................6

*Robinson v. Match.com, L.L.C.*,
    No. 3:10-CV-2651-L, 2012 WL 5007777 (N.D. Tex. Oct. 17, 2012), *aff'd sub*
    *nom. Malsom v. Match.com, L.L.C.*, 540 F. App'x 412 (5th Cir. 2013).................................18

*Shakeri v. ADT Sec. Servs., Inc.*,
    2014 WL 5780955 (N.D. Tex. Nov. 6, 2014) *aff'd on other grounds*, 2016 WL
    877136 (5th Cir. Mar. 7, 2016) ................................................................................................7

*Smith v. Fed. Nat. Mortg. Ass'n*,
    No. A-13-CA-1012-SS, 2014 WL 1365226 (W.D. Tex. Apr. 3, 2014) ....................................9

*Soon Phat, L.P. v. Alvarado*,
    396 S.W.3d 78 (Tex. App.—Houston [14th Dist.] 2013).......................................................11

*Southwestern Bell Tel. Co. v. DeLanney*,
    809 S.W.2d 493 (Tex. 1991).....................................................................................................8

*Sullivan v. Leor Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010) ..................................................................................................13

*Vallance & Co. v. DeAnda*,
    595 S.W.2d 587 (Tex. App.—San Antonio 1980, no writ) .....................................................7

*Williams v. WMX Technologies, Inc.*,
    112 F.3d 175 (5th Cir. 1997) ..................................................................................................13

**Statutes**

28 U.S.C. § 1441...............................................................................................................................5

Tex. Bus. & Com. Code § 17.46..................................................................................................16, 17

Tex. Bus. & Com. Code § 17.50(a)(1)...........................................................................................16

Tex. Civ. Prac. & Rem. Code § 38.001 .........................................................................................19

Texas Deceptive Trade Practices Act ..................................................................................2, 7, 16

Pursuant to Rules 12(b)(6), 8(a)(2), and 9(b) of the Federal Rules of Civil Procedure, Defendant, Summit Hosting LLC, f/k/a Software Link ("Software Link"), files this Motion to Dismiss Plaintiffs', Junior Volleyball Association of Austin d/b/a Austin Sports Center and Austin Sports Center, LLC (collectively "ASC"), Complaint, respectfully showing the Court as follows in its brief of support:

## PRELIMINARY STATEMENT

This action concerns allegedly "lost data." ASC—an operator of volleyball gymnasiums in Austin, Texas—contracted with Software Link—a electronic "cloud" provider—for data hosting services. Unfortunately, as alleged by ASC, on or around October 3, 2016 a "loss of data" event occurred. ACS now brings this action against Software Link seeking to recover over $1,000,000 in damages.

Although ASC asserts a laundry list of claims against Software Link, its complaint is razor-thin on facts to support its parade of horribles. Stripped of hyperbole, the Complaint reveals ASC's real gripe is that data hosted by Software Link under the parties' contract was allegedly lost in breach of the agreement. This alone precludes ASC's claims. In their agreement, ASC and Software Link contemplated the risk of data loss, and agreed that such loss would not give rise to a claim against Software Link. Accordingly, because this case is about data loss—something ASC agreed would not give rise to a claim—ASC's complaint should be dismissed as a matter of law.

Predictably, however, ASC complicates matters by attempting to plead around the contractual limitation of liability provision—and business deal—it agreed to with Software Link. Specifically, ASC asserts various gross negligence and willful misconduct claims in an attempt take advantage of contractual language that says Software Link can still be liable for data loss

events when it acted with "gross negligence or malfeasance." ASC's attempt to avoid the deal it made with Software Link should be rejected for numerous reasons.

First, ASC asserts claims for "Gross Negligence," "Grossly Negligent Hiring and Supervision," and "Fraudulent Inducement." None of these claims are viable. For starters, the economic loss rule precludes ASC's attempt to recover in tort damages for Software Link's alleged breach of contract because ASC has not pleaded a single violation of a duty imposed by law independent of the contract with Software Link. And in any event, ASC cannot plead the requisite elements of any of these three claims:

- *Gross Negligence*." Gross negligence requires willful and malicious conduct. ASC fails to plead that standard, much less plead allegations sufficient to meet it.

- *Grossly Negligent Hiring and Supervision*." This claim is pleaded despite the fact ASC appears to concede any alleged data loss was the result of actions of a Software Link vendor, **not** Software Link employees. ASC, however, has not pleaded that Software Link assumed any duty to hire, train, or supervise its vendor's employees, which is fatal to its claim.

- *Fraudulent Inducement*." Not only does ASC fail to comply with Rule 9(b)'s heightened pleading standard, but ASC's fraudulent inducement claim is a thinly veiled and improper attempt to convert an alleged breach of contract into a tort claim.

In addition to its tort claims, ASC attempts to plead a claim under the Texas Deceptive Trade Practices Act ("DTPA"). Like its fraud claim, however, this is simply an inappropriate attempt to recast this otherwise barred breach of contract action in a different context, all while failing to comply with Rule 9(b).

Accordingly, for all of these and the other reasons detailed below, ASC's claims are all fatally flawed and its complaint must be dismissed in its entirety.

## FACTUAL BACKGROUND

Software Link is a Georgia Corporation that provides cloud data hosting services. (Compl. ¶¶ 4, 7.)[1] In January 2012, representatives from ASC—an operator of volleyball gymnasiums in Austin, Texas—began negotiating for Software Link to serve as a cloud hosing site for ASC data. (*Id.* ¶¶ 2-3, 7.) As part of these negotiations, Stan Kania, Software Link's owner, represented to ASC employees that Software Link "maintained its own backup server in the event that the primary server failed or was otherwise destroyed." (*Id.* ¶ 8.) Based on this representation, in February 2012, ASC entered into a Hosting Agreement (the "Agreement") with Software Link whereby Software Link was to provide data hosting and backup services pursuant to the terms and conditions of the Agreement.[2] (*Id.* ¶¶ 9, 1; Brandon Dec. Ex. B, Agreement.)

Notably, the Agreement contains the following provision:

# Indemnification/Liability

Users shall indemnify and hold harmless Software Link, its agents, and employees, from any and all claims, judgments, damages, penalties, fines, costs, losses, or liabilities (including without limitation, reasonable attorney's fees and court costs), to the extent that such claims are proximately caused in whole or part by the negligent act or omission or willful misconduct of Client or Users. Software Link shall not be liable for any claims arising from server down time, unavailability of services, loss of data, corruption of data, system errors, Internet errors, or inappropriate use of the hosting system, unless such damages are caused by the sole

---

[1] A true and correct copy of ASC's complaint filed in state court is attached hereto as Exhibit A to the Declaration of Elizabeth C. Brandon ("Brandon Dec.").

[2] Software Link attaches a true and correct copy of the Agreement that ASC's complaint quotes from as Exhibit B to the Brandon Declaration in support of this motion. Because ASC's complaint quotes from the Agreement, the contract is incorporated by reference and the Court may consider it on a motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims."). Software Link, however, does not concede that this is the only contract that governs the relationship of the parties.

gross negligence or malfeasance of Software Link. This provision shall survive the expiration of this agreement with respect to any damages occurring before such expiration or termination.

(Brandon Dec. Ex. A, Agreement.) Following the execution of the Agreement in February 2012, Software Link collected ASC's data and provided data hosting services to ASC for $1,600/month. (Compl. ¶¶ 9, 12.) This amount was later reduced to $775 a month in November 2015. (*Id.*) Accordingly, between the execution of the Agreement and the data loss event that allegedly occurred four and one half years later, ASC paid Software Link approximately $80,000 for its data hosting services.

Unfortunately, however, as alleged in the complaint, on October 3, 2016 ASC "attempted to retrieve its data from the server and was told that the drive no longer existed." (*Id.* ¶ 14.) A few days later, ASC had a "conference call with Mr. Brian Wilder, Senior Network Engineer for Software Link, concerning the loss of data." (*Id.* ¶ 18.) During this and in subsequent communications, Software Link "admitted that there had been a data corruption of files starting with a software upgrade dating back to September 18, 2016," and explained that there was "no back up of Austin Sports Center's data…." (*Id.* ¶ 20.) Further, Software Link explained to ASC that the "loss of data" was due to the actions of "one of its subcontractors." (*Id.*)

Despite Software Link's efforts to restore ASC's data, (*Id.* ¶¶ 15, 20), on October 14, 2016 Mr. Wilder informed ASC that Software Link "would not be able to recover any of the data that it was contracted to store and maintain." (*Id.* ¶ 21.) Following this, ASC alleges that: its "staff and management have worked over 6,400 hours to recreate the data"; that it "suffered damages by having to hire additional temporary staff for the sole purpose of recreating data"; and that it "has had to forgo business opportunities that it had planned to pursue because…it could not obtain the proper financing from banks to do so." (*Id.* ¶¶ 22-23.)

Despite the fact it only paid Software Link $80,000 under the Agreement, ASC files this suit seeking over $1,000,000 in damages.  (*Id*. ¶5.)

## NATURE AND STAGE OF PROCEEDINGS

This case is in its early stages. ASC filed its complaint on July 5, 2017 in the 126th Judicial District Court of Travis County, Texas, and asserted five claims against Software Link: (1) breach of contract; (2) gross negligence; (3) fraudulent inducement; (4) grossly negligent hiring and supervision; and (5) violations of the DTPA.  (*Id*. ¶¶ 24-48.)  On August 11, 2017, Software Link timely removed the case to this Court pursuant to 28 U.S.C. § 1441.  Software Link now timely submits this Motion to Dismiss ASC's Complaint, and its Opening Brief in Support.

## ARGUMENTS AND AUTHORITIES

ASC has filed five causes of action against Software Link and seeks "monetary relief over $1,000,000."  (*Id*. ¶ 5.)  Putting aside the fact ASC only paid Software Link $80,000 under the Agreement (*Id*. ¶¶ 2, 12), ASC is not entitled to recover this or any other amount.  That is because ASC agreed to a limitation of liability provision that covers the exact claims ASC is asserting here, and ASC's attempts to plead around that limitation of liability provision fail to state a claim on which relief may be granted.

## I.      Applicable Standard of Review.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id*. at 555.  To determine whether a complaint states a plausible claim for relief: (1) "[a court] must identify those pleadings that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and (2) "[u]pon identifying the well-pleaded factual allegations, [a court must] then 'assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief.'" *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

## II. ASC'S Breach of Contract Claim Must Be Dismissed Because ASC Agreed To a Limitation of Liability Provision.

ASC's first—and primary—claim against Software Link is for an alleged breach of the parties' Agreement. (Compl. ¶¶ 24-27.) Specifically, ASC claims that "Software Link failed to honor its obligations under the Agreement and has breached the Agreement by permanently losing Austin Sports Center's data and by failing to maintain a backup system to secure the data." (*Id*. ¶ 26.) Unfortunately for ASC, however, the Agreement contains an "Indemnification/Liability" provision. That provision states:

> Software Link ***shall not be liable for any claims arising from*** server down time, unavailability of services, ***loss of data***, corruption of data, system errors, Internet errors, or inappropriate use of the hosting system, unless such damages are caused by the sole gross negligence or malfeasance of Software Link. This provision shall survive the expiration or termination of this agreement with respect to any damages occurring before such expiration or termination.

(Brandon Decl. Ex. B (emphasis added).) The Agreement's "Indemnification/Liability" provision thus acts as a limitation of liability and expressly covers "any claims arising from…loss of data…."

ASC neglects to even mention this provision in its complaint. But that is understandable given ASC's entire lawsuit—including its primary breach of contract claim—is based on an alleged "loss of data." (*See, e.g.,* Compl. ¶ 18 ("Unable to process its data, [ASC] had a conference call with…Software Link, concerning the loss of data."); ¶ 20 (alleging "the loss of data"); ¶ 22

(alleging "that Software Link had lost all of its data, and it would do nothing further to assist [ASC] with the data loss"; ¶ 25 (Software Link breached the Agreement by "losing…data, and by failing to maintain a backup system to secure the data.").)  Under Texas law, it is well settled that liability-limitations provisions in service contracts are valid and enforceable.  *See Kim v. Stanley Convergent Sec. Solutions, Inc.*, 2013 WL 1715789, at *2 (N.D. Tex. Apr.19, 2013) ("Texas courts have repeatedly upheld liability limiting clauses."); *Vallance & Co. v. DeAnda*, 595 S.W.2d 587, 590 (Tex. App.—San Antonio 1980, no writ) (enforcing limitation of damages provision in an alarm service contract)).  And such provisions can limit or preclude a claim for breach of contract. *See Shakeri v. ADT Sec. Servs., Inc.*, 2014 WL 5780955, at *10 (N.D. Tex. Nov. 6, 2014) *aff'd on other grounds*, 2016 WL 877136 (5th Cir. Mar. 7, 2016) ("The court therefore concludes that the 1999 Contract contains a valid limitation clause, and that Neimax's breach of contract claim should be limited accordingly"); *Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, 2013 WL 1715789, at *3 (N.D. Tex. Apr. 19, 2013) ("the Court concludes that the Agreement contains a valid limitation clause, and that Plaintiff's breach of contract claim should be limited accordingly").  Accordingly, ASC's breach of contract claims are wholly barred by the limitation provision it agreed to, and it is not entitled to recover "$1,000,000.00" or any other amount.

III.    **ASC's Attempt to Plead around the Agreement It Signed and Business Deal It Made Must Be Rejected.**

Indeed, ASC appears to recognize that its breach of contract claim is barred by the Agreement's limitation of liability provision.  In an attempt to circumvent this provision—and apparently to try and capitalize on the provision's language excluding the "sole gross negligence or malfeasance of Software Link"—ASC has attempted to plead claims of "gross negligence," "grossly negligent hiring and supervision," "fraudulent inducement," and a "violation of the Texas

Deceptive Trade Practices Act." As discussed below, ASC's creative pleading and attempt to circumvent the limitation of liability provision it agreed to fails as a matter of law.

## A. The Economic Loss Rule Bars ASC's Tort Claims.

For starters, all of ASC's tort claims are bared by the economic loss rule. They all arise from an alleged failure by Software Link to perform its contractual duties and "maintain a backup system to secure the data." (*See* Compl. ¶¶ 24-27.) The only injury ASC alleges from this failure is an economic one, arising from the loss of its data.

Nevertheless, to try and take advantage of the "gross negligence or malfeasance" exception in the limitation of liability provision, ASC repackages this alleged contractual breach as tort claims for "gross negligence," "grossly negligent hiring," and "fraud." For example, ACS's "gross negligence" claim hinges upon an alleged failure of Software Link to "perform, manage, and verify the backup and restore process," while its claim for "grossly negligent hiring and supervision" hinges on the failure of a Software Link vendor to, among other things, perform "the backup and restore processes" and other "obligations" referenced in the Agreement. (*See id.* ¶¶ 29, 34-35.) Moreover, ASC openly acknowledges that it bases its complaint for "fraudulent inducement" on alleged misrepresentations that were "incorporated into the Agreement" and constitute obligations thereunder. (*Id.* ¶¶ 10, 40.) And of course, the same injury arising from the "loss of data" due to Software Link's breach shows up as the sole component of damage for every tort claim ASC asserts. (*See id.* ¶¶ 31, 37, 42.)

When an injury is only the economic loss associated with a breach of contract, the action sounds exclusively in contract, not in tort. *See Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("[I]f the defendant's conduct... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex.

2014) ("The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."); *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999) (When "a contract spells out the parties' respective rights ... the contract and not common-law negligence governs any dispute" between the parties); *Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 144 (5th Cir. 1995) ("Texas does not permit recovery under a negligence theory for economic loss resulting from damage to a defective product."); *Hininger v. Case Corp.*, 23 F.3d 124, 126 (5th Cir. 1994) (reversing the district court's judgment allowing plaintiff to recover her lost profits and repair costs from defendant manufacturer under a negligence theory).

Because this case is actually about Software Link's alleged failure to comply with the Agreement that resulted in "lost data," ASC cannot use artful pleading to separately assert those same alleged failures as tort claims to try to avoid the limitation of liability provision of the Agreement. *See, e.g., Smith v. Fed. Nat. Mortg. Ass'n*, No. A-13-CA-1012-SS, 2014 WL 1365226, at *4 (W.D. Tex. Apr. 3, 2014) ("Smith's fraud claim is nothing more than an attempt to artfully replead her breach of contract claim, and is therefore barred by the economic loss doctrine because the parties' obligations were governed wholly by the mortgage documents."); *Carson Energy, Inc. v. Riverway, Bank*, 100 S.W.3d 591, 601 (Tex. App.—Texarkana 2003, pet. denied) (affirming summary judgment where plaintiffs did not allege violation of any duties imposed by law that were independent of the contract in question). ASC's attempt to do so should be rejected, and it must live by the deal and limitation of liability provision it agreed to.

## B. ASC Fails to Adequately Plead Its Tort Claims Against Software Link.

Even putting the economic loss doctrine aside, ASC's tort claims against Software Link must still be dismissed because ASC has not, and cannot, adequately plead any of them.

1.      **ASC fails to adequately plead gross negligence.**

ASC first attempts to plead around the limitation of liability provision by alleging, in conclusory fashion, that Software Link acted with gross negligence in not fulfilling its obligations under the Agreement.  (*Id.* ¶¶ 30-32.)  Gross negligence is defined as reckless and wanton misconduct, *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989), and is distinguished from ordinary negligence in that it "encompasses harm that is willfully inflicted or is caused by the wanton and reckless disregard for the safety of others."  *See Computalog U.S.A., Inc. v. Blake Drilling & Workover Co.*, Inc., No. 95–3009, 1996 WL 720761, at *2 (E.D. La. Dec. 9, 1996) (citing *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982)).

ASC has not alleged facts demonstrating Software Link acted willfully or with wanton and reckless disregard for safety.  Indeed, at best, ASC makes a conclusory statement that "Software Link acted with a conscious indifference to the impact on [ASC] that the loss of data would have…."  (Compl. ¶ 31.) The allegations of gross negligence thus present only the "mere possibility of misconduct" by Software Link and fall short of the plausibility showing required to meet federal pleading standards.  *Iqbal*, 556 U.S. at 679.  ASC's pleading makes it plain that it cannot adequately plead this claim, and it should be dismissed with prejudice.

2.      **ASC fails to adequately plead grossly negligent hiring and supervision.**

ASC next attempts to assert a claim for grossly negligent hiring and supervision. Specifically, ASC alleges that Software Link was grossly negligent in hiring and supervising a vendor, and that led to Software Link's failure to fulfill its "obligations" under the Agreement. (Compl. ¶ 35.)

As an initial matter, just like its general "gross negligence" claim, ASC does not allege Software Link acted willfully or with wanton and reckless disregard for safety.  Instead, ASC again makes a conclusory statement that "Software Link acted with a conscious indifference to the

impact on Austin Sports Center that the loss of data would have….” (Compl. ¶ 37.) As explained in section III.B.1 *supra*, this is insufficient to allege gross negligence.

Moreover, this claim fails because it is typically limited to the employer/employee relationship, and ASC's assertion that “Software Link owed a duty to [ASC] to properly hire and supervise ***any third-party vendor*** that Software Link used in performing Software Link's obligations” is incorrect as a matter of law. (Compl. ¶ 35 (emphasis added).) Negligent hiring and supervision claims are intended to directly hold a party responsible for their conduct in hiring or supervising an employee.[3] *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 100-101 (Tex. App.—Houston [14th Dist.] 2013) (“An employer who negligently hires, retains, or supervises an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligence or intentional act.”). Indeed, the existence of an employer-employee relationship is what gives rise to liability under this claim. The employee-employer relationship creates a duty on the part of the employer to control the employee's conduct by adequately training and supervising the employee. *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 459 (Tex. App.—Tyler 1996, no writ) (explaining scope of employer-employee relationship to give rise to liability for negligent supervision).

Here, however, ASC is not bringing this claim in connection with any actions by an employee of Software Link. Instead, ASC admits it is trying to bring this claim based on the actions of unspecified employees of a third-party vendor to Software Link. When alleged “negligent hiring and supervision” involving someone else's employees is at issue, a party must

---

[3] ASC's conclusory allegation that “[a]ny acts or omissions of the third party vendor giving rise to [ASC's] damages are legally attributable to Software Link, however, under agency law,” is therefore inapposite to this claim. (Compl. ¶ 35.) Agency law is designed to create vicarious liability, whereas the claim ASC asserts is one of direct liability. *See Soon Phat*, 396 S.W.3d at 101 (“A negligent hiring claim is based on an employer's direct negligence rather that the employers' vicarious liability for the torts of its employees.”)

show some duty was assumed to supervise and train the other's workers. *See Guillory v. Seaton, LLC*, 470 S.W.3d 237, 241-243 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (dismissing negligent supervision claim when nothing in contract indicated vendor assumed responsibility for another vendor's workers' safety training); *Knife River Corp.-S. v. Hinojosa*, 438 S.W.3d 625, 637 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (rejecting negligent undertaking from contractual written-notice requirement when "[n]othing in [the contract] indicates that the purpose of providing written notice to TxDOT was to address safety issues. Nor does it indicate that the provision was for the benefit or protection of third parties."). But the complaint alleges no facts to suggest that Software Link assumed any duty to supervise and train its vendor's workforce. At best, ASC pleads that Software Link stated it "'will assume responsibility' for its work," and that Software Link made vague assurances about the "efforts" it would use to safeguard data. (Compl. ¶ 34.) Of course, any assumption of responsibility by Software Link for its own work has nothing to do with work by a vendor, and assurances about "efforts" are "too vague to provide a basis in law for a duty to train or to ensure training" of another's workers. *See Guillory*, 470 S.W.3d at 241-42 (words like "assist," "desire," and "facilitation" in a contract do "not create an enforceable obligation" to train and supervise).

Accordingly, ASC's negligent hiring and supervision claim against Software Link based on the actions of unspecified employees of a Software Link vendor must be dismissed.

### 3. ASC fails to adequately plead its fradulent inducment claim.

Finally, ASC attempts to plead a fraud claim against Software Link, apparently trying to take advantage of the limitation of liability's "malfeasance" exception. ASC's fraud claim, however, suffers from numerous deficiencies, any one of which warrants dismissal.

### a.     ASC's pleading does not comply with Rule 9(b).

Allegations of fraud are held to a stricter standard than basic notice pleading.  *See, e.g.,*
*Flaherty & Crumrine Stockman v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).  "In alleging
fraud or mistake, a party must state with particularity the circumstances constituting fraud or
mistake."  Fed. R. Civ. P. 9(b).  Courts in the Fifth Circuit have consistently held litigants to this
standard.  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550—51 (5th Cir. 2010) (dismissing
fraud claim because plaintiff failed to "allege who at the company made the statements or when or
where they occurred [plaintiff] has failed to allege fraud with particularity under Rule 9(b)");
*Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 736 (N.D. Tex. 2008) (dismissing fraud
claims for failure to plead with particularity); *Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622,
653 (S.D. Tex. 2009) (same); *GMAC Commercial Mortgage Corp. v. E. Texas Holdings, Inc.*, 441
F. Supp. 2d 801, 810 (E.D. Tex. 2006) (same).

ASC's complaint falls well short of meeting the Rule 9(b) requirements of this circuit.  In
*Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997), for example, the plaintiff
alleged fraud in connection with a securities transaction and even went so far as to name the
individual alleged to have made the misrepresentations.  *Williams*, 112 F.3d at 178.  Nonetheless,
the court dismissed the fraud claim, finding the pleadings insufficient because they did not "state a
place or time that these representations were made."  *Id*.  The *Williams* court recognized that Rule
9(b) requires the "who, what, when, and where" of fraud to be spelled out.  *Id*.

Similar to *Williams*, ASC fails to plead the "who, what, when, and where" of its alleged
fraud.  To begin with, ASC fails to plead the where and the who.  At best the Complaint alleges that
"representatives from [ASC] conferred with Stan Kania, Software Link's owner, who repeatedly
assured [ASC] employees that Software Link maintained its own backup server in the event that

the primary server failed or was otherwise destroyed." (Compl. ¶ 8.) This was supposedly the representation ASC relied upon when entering into the Agreement. (*Id.* ¶ 9.)

This allegation, however, does not identify a specific place where this allegedly critical assurance was made, and it even fails to identify the specific individual(s) at ASC who received the alleged misrepresentation. Moreover, ASC's pleading fails to identify the when. The closest ASC comes to alleging a specific date or time of an alleged misrepresentation is that the parties negotiated the Agreement "in January 2012." (*Id.* ¶7.) This allegation, however, does not relate to a specific representation, and the critical representation ASC supposedly relied upon has no date associated with it at all. (*Id.* ¶ 8.)

Accordingly, ASC's fraud claim must be dismissed. Instead of pleading the requisite who-what-when-and-where, ASC's fraud claim appears to have been improvidently tacked onto the complaint in an attempt to circumvent the Agreement's limitation of liability provision. General allegations that Stan Kania purportedly told *someone* at ASC , at *someplace*, at *sometime* that Software Link "maintained its own backup server" is insufficient for ASC's fraud claim to move forward.

> **b.** **ASC fails to plead facts showing Mr. Kania's alleged representation was false.**

ASC's fraud claim suffers from another fatal flaw; it has not pleaded any facts suggesting the supposed representation that ASC purportedly relied on was false. Instead of relying on facts, ASC inappropriately employs circular reason and a conclusory statement to try to establish that Software Link made an actionable misrepresentation to ASC.

Specifically, ASC claims it was induced to execute the Agreement based on a representation "that Software Link maintained its own backup server in the event that the primary server failed or was otherwise destroyed." (*Id.* ¶ 8.) Because it suffered lost data, ASC

assumes—without pleading any facts in support—that "Software Link did not, in fact, maintain any secondary server…." (*Id.* ¶ 41.) Piling onto this specious assumption, ASC then concludes that Software Link **must have committed** fraud. And rounding out the circular logic, ASC pleads that it can recover damages as a result of the lost data, even though it was the mere fact that data was lost that ASC relies on to (improperly) conclude fraud occurred in the first place.

Simply because ASC has allegedly suffered lost data does not mean that ASC can rely on the logical fallacy (based on assumptions and unsupported conclusions) that Software Link "did not, in fact, maintain any secondary server." Suffering lost data and maintaining a secondary server are not mutually exclusive. For example, both a prime server and backup server could be corrupted, leading to lost data, but that does not mean the backup server did not exist.

"A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir.2011) (quoting *Iqbal*, 556 U.S. at 679). ASC thus cannot be allowed to use circular reasoning and faulty logic to plead a fraud claim. ASC has no basis to assert that Software Link was not maintaining a backup server, and ASC should not be allowed to avoid a limitation of liability provision it agreed to by manufacturing a claim that has no basis in fact.

> ### c. ASC cannot claim a failure to perform under the Agreement constitutes fraud.

Finally, ASC attempts to expand its fraud claim to terms of the Agreement itself. For example, in paragraph 40 of its complaint, ASC states that:

> Software Link falsely represented to Austin Sports Center that it would perform "multiple daily backups to insure data is secure," that it was providing "7/24 Server Monitoring," that its efforts would be "no less than what Software Link uses to safeguard its own confidential information," and that "Software Link itself would have "responsibility for performing, managing, and verifying of the backup and restores processes" for Austin Sports Center's data.

(Compl. ¶ 40.)  Each and every one these "representations," however, are actually terms of the Agreement.  (Brandon Dec. Ex. B, Agreement.)  Indeed, as explained above, ASC openly admits that it bases its complaint for "fraudulent inducement" on alleged misrepresentations that were "incorporated into the Agreement" and constitute obligations thereunder. (*Id*. ¶¶ 10, 40.)

Texas law is clear: "the failure to perform the terms of a contract is a breach of contract, not a tort."  *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992) (overruled on other grounds); *see also* Part II.A, *supra*.  Accordingly, ASC cannot morph allegedly breached contractual obligations into a fraud claim.  That is especially true here where ASC's breach of contract claim is otherwise barred by a limitation of liability provision.

### C.  ASC's Fails To State a DTPA Claim Against Software Link.

Finally, ASC attempts to invoke the Texas Deceptive Trade Practices Act to save it case. The DTPA grants consumers a cause of action for damages caused by false, misleading, or deceptive acts or practices.  *See* Tex. Bus. & Com. Code § 17.50(a)(1); *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  The elements of a DTPA claim are: (1) the plaintiff is a consumer; (2) the defendant either engaged in false, misleading or deceptive acts that violated a specific provision of section 17.46 of the DTPA, or otherwise engaged in an unconscionable action or course of action; and (3) the DTPA violation, or unconscionable action, was a producing cause of the plaintiff's injury.  Tex. Bus. & Com. Code Ann. § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex.1995).  ASC has not come close to pleading Software Link engaged in any false, misleading, or deceptive acts.

Specifically, ASC seeks to hold Software Link liable for an unspecified violation of the DTPA.  In other words, ASC completely fails to allege the purported wrongful nature of Software

Link's conduct that gives rise to DTPA liability. Software Link is, therefore, left to guess as to which of the provisions of Section 17.46 of the DTPA ASC alleges Software Link violated.

This is improper, and is especially fatal to ASC's DTPA claim because Rule 9(b)'s heightened pleading standard applies to DTPA actions. ASC attempts to plead a DTPA claim with a laundry list of issues and alleged misrepresentations "regarding the characteristics, uses, and benefits of Software Link's services," without even making an attempt to meet Rule 9(b) requirements. (Compl. ¶ 46.) Simply put, ASC's conclusory allegations unaccompanied by the "who, what, when, and where" do not come close to meeting the heightened pleading standard that is necessary. *See Lone Star Ladies mv. Club v. Schlotzsky's Inc.*, 238 F. 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) ("Claims alleging violations of the…DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)."); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (same). *See also* section III.B.3 *supra*.

Even if ASC's laundry-list pleading was sufficient under Rule 9(b) (which it is not), ASC's DTPA claim fails for the additional reason that its allegations center on Software Link's purported failure to abide by the terms of the Agreement. (Compl. ¶¶ 45-47.) The Texas Supreme Court has made clear that "an allegation of a mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14-15 (Tex. 1996).

In *Crawford*, plaintiff alleged that defendant made misrepresentations in connection with and before renewing a contract for advertising services in phone books, causing plaintiff to lose

significant business. *Crawford*, 917 S.W.2d at 14-15. Plaintiff claimed these representations supported its fraud-based DTPA claim. *Id.* The court disagreed, noting that the alleged misrepresentations were nothing more than statements that defendants would fulfill their contractual duties: "[t]he statements themselves did not cause any harm. The failure to run the advertisement (the breach of the contract) actually caused the lost profits, and that injury is governed by contract law, not the DTPA." *Id.* at 14-15. *See also Robinson v. Match.com, L.L.C.*, No. 3:10-CV-2651-L, 2012 WL 5007777, at *6 (N.D. Tex. Oct. 17, 2012), *aff'd sub nom. Malsom v. Match.com, L.L.C.*, 540 F. App'x 412 (5th Cir. 2013) ("[B]ased on the reasoning in *Crawford*, that even if it accepts as true Plaintiffs' allegations, it appears that their Complaint sounds only in contract, and they have failed to state a claim under the DTPA."); *Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188, 191 (5th Cir. 1986) (dismissing a DTPA claim arising out of errors in published yellow pages ad because the alleged misrepresentation was nothing more than Southwestern Bell's failure to perform its promise to correctly print the ad); *Dura-Wood Treating Co. v. Century Forest Industries, Inc.*, 675 F.2d 745 (5th Cir. 1982); *Farina v. Southwestern Bell Media, Inc.*, 658 F. Supp. 826, 828 (S.D. Tex. 1987) (holding plaintiff could recover on contract only, not under DTPA, in suit involving failure to publish listing in yellow pages); *Holloway v. Dannenmaier*, 581 S.W.2d 765, 767 (Tex. Civ. App.—Fort Worth 1979, writ dism'd) (noting that mere failure to later perform a promise does not constitute misrepresentation).

The same reasoning applies here. Like *Crawford*, ASC alleges Software Link violated the DTPA because it failed to follow through on a contractual promise to provide a functioning backup system for ASC's lost data. The DTPA claim premised on this conduct fails because it was "nothing more than representations that the defendant[] would fulfill [its] contractual duty…and

the breach of that duty sounds only in contract"—it cannot support a DTPA claim.  *Crawford*, 917

S.W.2d at 14.

**IV.**     **ASC is Not Entitled To Recover Its Attorneys' Fees.**

ASC also makes a claim for attorneys' fees and costs.  ASC relies on the DTPA and Tex.

Civ. Prac. & Rem. Code § 38.001—that allows a person to "recover reasonable attorney's fees…in

addition to the amount of a valid claim" on an "oral or written contract"—to recover these

expenses.  As discussed above, however, both ASC's breach of contract claim and DTPA claim

fail as a matter of law and should be dismissed.  Likewise, any claim for attorneys' fees based on

ASC's breach of contract and/or DTPA causes of action should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Software Link respectfully requests that the Court dismiss

the Complaint in its entirety with prejudice, and grant Software Link such other and further relief

to which it may be entitled.

Dated: August 18, 2017

Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ Elizabeth C. Brandon*
Elizabeth C. Brandon
Texas Bar No. 24049580
ebrandon@btlaw.com
2100 McKinney Ave., Ste. 1250
Dallas, TX 75201
Telephone: (214) 258-4200
Facsimile: (214) 258-4199

*Attorney for Defendant*

## CERTIFICATE OF CONFERENCE

On August 18, 2017, the undersigned communicated with opposing counsel, Susan P. Barton, regarding the foregoing Motion. Plaintiffs oppose the relief sought in this Motion.

*/s/ Elizabeth C. Brandon*
Elizabeth C. Brandon

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent to all counsel of record by electronic means on the 18th day of August, 2017 as follows.

*/s/ Elizabeth C. Brandon*
Elizabeth C. Brandon