**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| JUNIOR VOLLEYBALL ASSOCIATION | § | |
| OF AUSTIN d/b/a/ AUSTIN SPORTS CENTER, | § | |
| and AUSTIN SPORTS CENTER, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:17-cv-00756 |
| | § | |
| SUMMIT HOSTING LLC, fka SOFTWARE | § | |
| LINK HOSTING, LLC, fka SOFTWARE | § | |
| LINK, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS [DKT. 5]**

TO THE HONORABLE LEE YEAKEL, JUDGE OF SAID COURT:

Plaintiffs Junior Volleyball Association of Austin d/b/a Austin Sports Center and Austin Sports Center LLC (collectively "Plaintiffs" or "ASC") respectfully file this response in opposition to Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) [Dkt. 5].

The facts alleged in ASC's complaint, taken as true for purposes of Rule 12(b)(6), state claims for gross negligence, fraudulent inducement, breach of contract, DTPA, and associated property damage which fall outside of the economic loss rule under Texas law. Defendant's commission of gross negligence and malfeasance also form a basis for *contractual* liability, as expressly stated in the parties' agreement. Defendant's motion to dismiss should be denied.

I.      **Applicable standard of review under Rule 12(b)(6)**

Federal courts in Texas have routinely recognized that "a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Hernandez v. Baylor Univ.*, No. 6:16-CV-69-RP, 2017 WL 1322262, at *1 (W.D. Tex. Apr. 7, 2017) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)). For purposes of a Rule 12(b)(6) motion, the movant "'admits the

facts alleged in the complaint." *Delgado v. Webb County, Texas*, 2006 WL 133468 *3 (S.D. Tex. 2006) (Alvarez, J.); *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 215 (5th Cir. 2008) (unpublished) (quoting *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997)).

To pass muster under Rule 12(b)(6), a complaint "does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotation marks and citation omitted). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The "district court may not dismiss a complaint under rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lowrey*, 117 F.3d at 247; *see also Century Sur. Co. v. Blevins*, 799 F.3d 366, 371 (5th Cir. 2015) (same). The "question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247.

**II.    ASC has sufficiently pleaded that its damages were caused by the "sole gross negligence or malfeasance of Software Link."  The contract also expressly makes such misconduct actionable, as a carve-out from its limitation-of-liability clause**.

In its motion to dismiss, Software Link argues at length that "it is well-settled that

liability-limitations provisions in service contracts are valid and enforceable." [Dkt. 5 at 12.] The cases that Software Link cites do not support that overstatement, but just as importantly, its argument has no bearing here: the Agreement limits Software Link's liability for loss of ASC's data, "*except* when the loss of ASC's data was caused by the sole gross negligence or malfeasance of Software Link."[1]   The provision relevant to ASC' claims is not the general liability-limitation clause, but instead the express *carve-out*, which unambiguously provides for liability when ASC' loss of data is due to Software Link's "gross negligence or malfeasance."

First, by quoting fragments of sentences which discuss liability-limitation provisions in Texas, Software Link misstates Texas law on that subject. For example, to support its argument that "it is well-settled that liability-limitations provisions in service contracts are valid and enforceable," Software Link quotes out of context an incomplete statement from *Kim v. Stanley Convergent Sec. Solution*, No. 12-4445, 2013 WL 1715789, at *2 (N.D. Tex. Apr. 19, 2013):

| *The full sentence as quoted by Defendant:*[2] | *The actual full sentence from the decision*: |
| --- | --- |
| "'Texas Courts have repeatedly upheld liability limiting clauses.'" | "Texas Courts have repeatedly upheld liability limiting clauses **in alarm contracts**." |

*Kim* and the Texas cases it cites discuss that proposition in the context of *burglar alarms*, focusing on liability for security systems when a client has been burglarized by a third party, and apportionment of risk in the context of potential burglary. Defendant cites no authority from any other fact context to support the proposition that limitation-of-liability provisions are valid and enforceable as a matter of law, or that dismissal is appropriate on those grounds alone.

In any event, even if the Court were to find as a matter of law that the limitation-of-

---

[1] Dkt. 6-2 at 2 (emphasis added).

[2] Defendant's citations to *Kim v. Stanley Convergent Sec. Solutions, Inc.*, and to *Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, refer to the same reported decision. [Dkt. 5 at 7.]

liability clause is enforceable in isolation from the Agreement's representations, the clause itself states that its limitation does *not* apply when loss of data is caused by the "sole gross negligence or malfeasance of Software Link." [Dkt. 6-2 at 2.] ASC has alleged such gross negligence and misfeasance, including fraudulent inducement and DTPA violations. [Dkt. 6-1 ¶¶ 28-48.][3]

ASC's complaint satisfies pleading requirements for the elements of gross negligence, demonstrating that (1) the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor had subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights of others.[4] The complaint alleges that Software Link and ASC began negotiating in January 2012 for Software Link to serve as a cloud data hosting site for ASC's valuable data, including its financial and QuickBooks data, which are fundamental to ASC's ability to operate as a business. [Dkt. 6-1 at ¶ 7.][5] As part of that negotiation, representatives from ASC conferred with Software Link's owner, who repeatedly assured ASC employees — falsely — that Software Link maintained its own backup server in the event that the primary server failed or was

---

[3] Commission of fraud and DTPA violations constitutes "malfeasance." *See, e.g., Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995) ("A plaintiff suing under the DTPA must prove that the defendant's malfeasance was the producing cause of his damages."); *Industras Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc*., 293 F.3d 912, 920, *op. clarified on other grounds*, 310 F.3d 786 (5th Cir. 2002) (per curiam) (Black's Law Dictionary defines malfeasance as a "'wrongful or unlawful act'"). *Compare Suggs v. Nationwide Ins. Co*., 2007 WL 3010524 *3 (E.D. Pa. Oct. 16, 2007) (Malfeasance is such affirmative conduct "as an act of misrepresentation or deception, or a reckless mistake made").

[4] *See, e.g., Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014); *Fugett v. DCP Midstream, L.P*., No. 2:14-CV-00111-J, 2015 WL 510965, at *5 (N.D. Tex. Feb. 6, 2015) ("Plaintiffs allege that 'Defendant's conduct heedlessly and recklessly disregarded Plaintiffs' rights and involved such an entire want of care as to indicate that it was a result of conscious indifference to Plaintiffs' rights, welfare and safety.' Furthermore, Plaintiffs allege that Defendant was subjectively aware of the extraordinary risks associated with pipeline excavations. These allegations of gross negligence are sufficient to survive a motion to dismiss."); *Hernandez v. Wood/Chuck Chipper Corp*., No. 4:1 l–CV–597, 2012 WL 1836352, at *4 (E.D. Tex. Apr. 13, 2012) (plaintiff stated a claim for gross negligence where plaintiff "pleaded that the Defendants acted with conscious indifference to the rights, safety, or welfare of others when they manufactured and sold a wood chipper with an extreme degree of risk to the employer of Plaintiff").

[5] ASC's petition in the District Court for Travis County is referred to herein as the "Complaint."

otherwise destroyed.  [*Id*. ¶¶ 8, 13, 46.]  Relying on these representations, ASC entered into a contract in February 2012 for Software Link to host ASC's data for a fee (the "Agreement"). [*Id*. ¶ 9.]   Among other contractual representations, the Agreement expressly stated that "'Software Link will assume responsibility for performing, managing, and verifying of the backup and restore processes for the Data,'" that it monitored the server "7/24," and that it would use commercially reasonable efforts to "protect and safeguard" ASC's data that were "'no less than what Software Link uses to safeguard its own confidential information.'"  [*Id*. ¶¶ 10, 13.] The Agreement also stated that "'A back-up tape or electronic copy of Data will be maintained offsite or in Software Link's disaster recovery site as determined by Software Link.'"  [*Id*. ¶ 10.]

On October 3, 2016, ASC attempted to retrieve its data from the server, and was told that the drive no longer existed.  [*Id*. ¶ 15.]  Software Link representatives continued to assure ASC that Software Link could restore ASC's data.  However, on October 14, 2016, a representative of Software Link informed ASC that it would not be able to recover *any* of ASC's data, and further confirmed that the putative backup copy of ASC's data referred to in Software Link's multiple oral and written representations *had never existed in the first place*.  [*Id*. ¶ 21.]

In short, ASC has pleaded that: (1) Software Link's President repeatedly represented that all data would be housed in a separate backup server; (2) Software Link never in fact had such a backup server, and *knew* it did not have one; (3) ASC expressly relied on these written and oral representations when it entered into the Agreement; (4) Software Link knew that ASC's data was extremely important and essential to ASC's business; and (5) Software Link failed to have a backup server with conscious indifference to the fact that ASC would suffer grave losses without access to its data.  [Dkt. 6-1 ¶¶ 7-9).]  These allegations are more than sufficient to state a claim that Defendant acted in a grossly negligent manner, that it fraudulently induced ASC to enter into the Agreement, and that it engaged in knowingly false, misleading, and deceptive acts and

5

practices.

**IV.    The economic loss rule does not bar ASC's tort claims**.

Defendant also claims that "all of ASC's tort claims are barred by the economic loss rule."   ASC pleads three tort claims: fraudulent inducement, gross negligence, and grossly negligent hiring and supervision.   Each of these tort claims, however, fall outside of the economic loss rule either by contract, or by law *and* contract.

**A.    Fraudulent inducement claims fall outside of the economic loss rule**.

Defendant completely ignores the fact that claims of fraudulent inducement fall outside of the economic loss rule. *See Gruber v. Deuschle*, No. 00-17, 2002 WL 523957, at *7 (N.D. Tex. Apr. 5, 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 47 (Tex. 1998)) (fraudulent inducement claims are not subject to the economic loss rule under Texas law); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 07-111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties to the contract had an independent duty not to commit the intentional tort of fraud); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No 10-144, 2011 WL 1627115, at *12 (E.D. Tex. Apr. 7, 2011) (holding that the economic loss rule did not apply to fraud claims, including claims for fraud in the performance and fraudulent omission).

Here, ASC has pleaded that (1) Software Link representatives made specific knowingly false misrepresentations during the negotiation phase of the underlying contract; (2) ASC relied on those misrepresentations in entering into the contract; and (3) those misrepresentations were false and damaged ASC.   Texas law is clear that Software Link owed ASC an independent duty not to misrepresent the terms of the contract between the parties, and that the economic loss doctrine therefore does not apply in such instances.   *See Formosa Plastics*, 960 S.W.2d at 47.

6

ASC's claim for fraudulent inducement (Count IV) is not barred by the economic loss doctrine.

**B.     The economic loss rule does not bar the gross negligence claim because that claim focuses on Software Link's knowingly false misrepresentations**.

The economic loss rule also does not bar ASC's gross negligence claim because Software Link made representations to ASC that it knew were false – *e.g*, that ASC's data was completely secure and that Software Link maintained a backup (when all along it had no backup system at all).   "Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties.   Nevertheless, *if the defendant's conduct would give rise to liability independent of the fact that a contract exists* between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract."  *Wilkerson v. Citimortgage, Inc*., No. 11-1393, 2011 WL 6937382, at *6 (N.D. Tex. Oct. 24, 2011), *report and recommendation adopted*, 2012 WL 11039 (N.D. Tex. Jan. 3, 2012) (emphasis added).

Here, Software Link acted with an extreme risk of danger to ASC when it represented that ASC's data would be secure on Software Link's "multiple" servers, and that Software Link would manage and verify the backup of ASC's data (on a system Defendant knew did not actually exist).   [*See* Dkt. 6-1 ¶¶ 8,10.]   By making knowingly false affirmative misrepresentations and failing to maintain the promised servers, Software Link knew it was risking the loss of ASC's data.   Its misconduct gives rise to an independent cause of action wholly *outside* the bounds of the Agreement. The economic loss rule therefore does not bar Plaintiffs' gross negligence claim.

**C**.     **The economic loss rule has no application where, as here, the parties specifically contracted for potential liability**.

The economic loss rule also has no application to Plaintiffs' gross negligence claims because Software Link, by contract, specifically agreed to that potential liability.   The

Agreement provides that Software Link *would* be liable to ASC for any claims arising out of loss of data if "such damages are caused by the sole gross negligence or malfeasance of Software Link." [Dkt. 6-2 at 2.]

For unintentional torts, the economic loss rule expresses a "preference for allocating some economic risks by contract rather than by law." *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 236 (Tex. 2014) (discussing the common law's recognition of the economic loss rule in "actions for unintentional torts," and that the rule expresses a "preference for allocating some economic risks by contract rather than by law"). Leaving aside the intentional nature of Software Link's torts, Software Link *did* specifically allocate economic risk by contract to itself for gross negligence or malfeasance. Ignoring the parties' allocation of "economic risks by contract" runs directly counter to the economic loss rule.

## V.     ASC adequately pleaded all tort claims against Software Link.

Taking the well-pleaded allegations in the Complaint as true for purposes of the motion to dismiss, as required under Rule 12(b)(6) standards, ASC has adequately set forth the causes of action for each of its tort claims.

### A.     Gross Negligence.

ASC has adequately pleaded facts showing gross negligence, in that Software Link's acts and omissions objectively involved an extreme degree of risk, considering the probability and magnitude of the potential harm to ASC, and Software Link had actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights of ASC. ASC pleaded the following:

- That Software Link's owner, Stan Kania, repeatedly assured ASC that it maintained its own backup server in the event that primary server failed or was otherwise destroyed. [Dkt. 6-1 ¶ 8];
- That ASC relied on these representations when it entered into the server agreement. [*Id.*

¶ 9];

- That Software Link never in fact maintained an independent backup site, contrary to its express representation. [*Id.* ¶ 20];

- That Software Link represented in writing that its services included "Multiple daily backups to insure data is secure," "7/24 Server Monitoring," and "7/24 access to [Austin Sports Center's] applications via the internet." [*Id.* ¶ 13];

- That Software Link repeatedly lied to ASC concerning the status of ASC's data once it had been destroyed. [*Id.* ¶ 13];

- That Software Link representatives repeatedly reported to ASC that they would be able to recover their data. [*Id.* ¶ 21];

- That the backup copy described in Software Link's oral and written representations did not exist—and never had. [*Id.* ¶ 20];

- That Software Link acted with a conscious indifference to the impact that the loss of ASC's data would have on its business when Software Link failed to perform, manage, and verify the backup and restore process for ASC's data and failed to notify ASC of the potential data loss, and when it failed to set up the backup system that Software Link specifically represented to ASC existed, and that the Agreement specifically promised. [*Id.* ¶ 28.]

Accepting the above as true, ASC has clearly stated a *prima facie* case of gross negligence. Texas courts have regularly denied motions to dismiss on allegations materially similar to those here. *See, e.g.*, *Roberts v. Zev Techs., Inc.*, No. 15-309, 2015 WL 7454688, at *8 (W.D. Tex. Nov. 23, 2015) (declining to dismiss gross negligence claims against a gun manufacturer where it was alleged that the defendants had knowingly made representations that were false); *Fugett*, 2015 WL 510965, at *5 (declining to dismiss gross negligence claims where plaintiffs had alleged that "Defendant's conduct heedlessly and recklessly disregarded Plaintiffs' rights and involved such an entire want of care as to indicate that it was a result of conscious indifference to Plaintiffs' rights, welfare and safety" and that "Defendant was subjectively aware of the extraordinary risks associated with pipeline excavations"); *Hernandez*, 2012 WL 1836352, at *4 (refusing to dismiss gross negligence claim where Plaintiff "pleaded that the Defendants acted with conscious indifference to the rights, safety, or welfare of others when they manufactured and sold a wood chipper with an extreme degree of risk to the employer of

Plaintiff").

If the Court nevertheless determines that it has not met its burden, ASC should be permitted to amend the Complaint to expand upon the facts that demonstrate Software Link's gross negligence.

**B.    Grossly Negligent Hiring and Supervision**.

In addition to Software Link's gross negligence, ASC alleges that Software Link was grossly negligent in its hiring and supervision of contractors that it may have hired to perform data hosting for ASC.

Defendant asserts that this claim fails because gross negligence is "typically" limited to "the employer/employee relationship." [Dkt. 5 at 16.]  Its assertion is simply inaccurate.  Texas law also imposes liability for negligent hiring of independent contractors.  Just as importantly, Software Link contractually represented that *it* would perform the services itself, that it would "assume responsibility for performing, managing, and verifying of the backup and restore processes for the Data," and that it would protect and safeguard ASC's data with "efforts no less than what Software Link uses to safeguard its own confidential information."  [Dkt. 6-2 at 2.]

"Texas recognizes a cause of action for negligently hiring an independent contractor." *Mireles v. Ashley*, 201 S.W.3d 779, 782 (Tex. App.–Amarillo 2006, no pet.).   One who hires an independent contractor may be held responsible for the contractor's negligent acts if (1) it knew or should have known that the contractor was incompetent; and (2) a third person was injured because of the contractor's incompetence.  *Id*.  A person employing an independent contractor is required to use ordinary care in hiring the contractor.  *See King v. Assocs. Commercial Corp*., 744 S.W.2d 209, 213 (Tex. App.–Texarkana 1987, writ denied); *Jones v. Sw. Newspapers Corp*., 694 S.W.2d 455, 458 (Tex. App.–Amarillo 1985, no writ).   Whether Software Link exercised ordinary care in hiring the undisclosed subcontractor is an issue of fact that cannot be resolved

on a motion to dismiss, especially where, as here, ASC has alleged that it did not.

Second, Software Link admits that, when alleging a negligent hiring and supervision claim involving a third party (in this case a subcontractor), "a party must show some duty was assumed to supervise and train the other's workers."  [Dkt. 5 at 17.]  In the Complaint, ASC specifically alleges that Software Link represented to ASC that it would "assume responsibility for performing, managing, and verifying of the backup," of ASC's data, and indeed, Software Link says that directly in the Agreement.  [Dkt. 6-1 ¶ 20; Dkt. 6-2 at 2.]  Software Link now tries to cast aside this assertion by stating that the Complaint "alleges no facts to suggest that Software Link assumed any duty to supervise and train its vendor's workforce."  [Dkt. 5 at 17.]  Under Software Link's theory, it could (1) represent to ASC that it assumed responsibility for performing, *managing,* and verifying the backup of data; and (2) have no duty to make sure that its independent contractors or subcontracts actually performed their tasks correctly.  In essence, Software Link is asserting that it could represent to ASC that its data was safe and being *managed by Software Link*, and Software Link could – without any consequence – send the data off to a completely unvetted and unverified third-party vendor, and thereby wash its hands of any liability.  This simply is not what Texas law currently provides.

Moreover, ASC does not know the identity of the alleged subcontractor or independent contractor that Software Link claims it hired to host its data (despite the clear language in the contract that Software Link itself would be responsible for performing, managing and verifying the data backup).  At this point in the proceedings, ASC should be permitted to conduct discovery to learn the identity of the alleged entity and be allowed to amend its pleadings accordingly upon learning of the subcontractor or independent contractor's identity.

    **C.**    **Fraudulent Inducement**.

        **i.**        **The Complaint sufficiently complies with Rule 9(b)**.

Defendant also argues that the Complaint does not spell out the "who, what, when, and where" of the fraud as required by Rule 9(b).  [Dkt. 5 at 18.]  "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quotation marks omitted).  The Fifth Circuit recognizes "that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading."  *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185–86 (5th Cir. 2009) (footnote omitted).

Importantly, "Rule 9(b) *does not* reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (footnote omitted; quotation marks omitted; emphasis added).

Here, ASC satisfied Rule 9(b) by pleading that:

(1) Stan Kania, Software Link's owner, repeatedly assured ASC employees that Software Link maintained its own backup server in the event that the primary server failed or was otherwise destroyed.  [Dkt. 6-1 ¶ 7.]

(2) This misrepresentation took place during the contract negotiations in January 2012.  [*Id.* ¶ 8.]

(3) Software Link made the following misrepresentations in the actual written contract:

    a. that Software Link would assume responsibility for performing, managing, and verifying of the backup and restore processes for the Data.  A back-up tape or electronic copy of Data will be maintained offsite or in Software Link's disaster recovery site as determined by Software Link; and

    b. that the data was confidential and proprietary to Austin Sports Center, and that Software Link's efforts to "protect and safeguard" Austin Sports Center's data would be "no less than what Software Link uses to safeguard its own confidential information."  [*Id.* ¶ 10.]

(4) ASC relied on these misrepresentations when it entered into the Agreement.  [*Id.* ¶ 11.]

ASC has alleged that Defendant's president, Mr. Kania, made specific misrepresentations

concerning Software Link's ability to maintain ASC's data without destroying it, that it had a backup system in place that would safeguard against such loss, that these and other misrepresentations were false (as evidenced by the fact that ASC's data was, in fact, destroyed, and that Defendant never had a backup system to begin with), that these misrepresentations were relied upon by ASC, and that they caused ASC damages. ASC has, therefore, sufficiently pleaded a fraudulent misrepresentation claim under Rule 9(b).[6]

> ii.     **The Agreement's language only reinforces the claim for fraudulent misrepresentation**.

Software Link made misrepresentations concerning its ability to host ASC's data in a secure manner that would guarantee it would not be lost, including "Multiple daily backups to insure data is secure" and "7/24" monitoring. [Dkt. 6-1 ¶ 13.] It bolstered that representation with false statements that it had its own backup server in case the primary server failed. [Dkt. 6-1 ¶¶ 8, 10-13.] By misrepresenting those facts, it fraudulently induced ASC into signing the Agreement. [*Id.* ¶¶ 11, 40-44.] Software Link's misrepresentations were incorporated into the Agreement, even though Software Link *knew* they were false. [Dkt. 6-2 at 2.]

Software Link now tries to avoid liability for these misrepresentations by stating that "ASC cannot claim a failure to perform under the Agreement constitutes fraud." [Dkt. 5 at 20.] As Texas law has long recognized, however, it "is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa Plastics*, 960 S.W.2d at 46. ASC pleaded that Software Link, at the time it negotiated and entered into the Agreement, had no intention of honoring the terms that were set out in the Agreement, including its promised multiple daily backups to a server that did

---

[6] Additionally, this Petition was filed in state court, under Texas "notice pleading" standards. Defendant thereafter removed the case to this Court. Should the Court agree with Defendant that ASC has not met the pleading standards of Rule 9(b), Plaintiffs respectfully requests that the Court grant Plaintiffs the right to amend the Petition.

not even exist.  In other words, the claim is not merely that Software Link failed to *perform* under the Agreement, it is that Software Link never *intended* to perform in accordance with the terms therein, and Software Link knew it lacked the backup system which would be necessary for it to perform.  The fact that misrepresented terms were later incorporated into the Agreement does not insulate Defendant from fraudulently inducing the contract.

> **D.      ASC has adequately pleaded its DTPA claim.**

> **i.      ASC has satisfied Rule 9(b).**

Software Link also asserts that ASC has not complied with the pleading standard of Rule 9(b) with respect to its DTPA claim.  In the DTPA section of the complaint, ASC has pleaded:

> Software Link made representations regarding the characteristics, uses, and benefits of Software Link's services, which they did not have, and failed to disclose information concerning its services which were known by Software Link at the time it entered into the Agreement which was intended to induce Austin Sports Center into the transaction, and in which Austin Sports Center would not have entered had such information been disclosed.  Among other material misrepresentations, Software Link represented to Austin Sports Center that it would maintain its own backup server, and would perform multiple daily backups, to "insure data is secure," even in the event that the primary server failed. Software Link's acts were false, misleading, and deceptive, including Software Link's knowingly false representations that Software Link itself would be responsible for performing, managing, and verifying the backup.  [Dkt. 6-1 ¶ 46.]

To support these claims, ASC has pleaded facts, which accepted as true, satisfy the pleading requirement of the Rule 9(b):

> (1) Stan Kania, Software Link's owner, repeatedly assured ASC employees that Software Link maintained its own backup server in the event that the primary server failed or was otherwise destroyed.  [Dkt. 6-1 ¶ 8.]

> (2) This misrepresentation took place during the contract negotiations in January 2012. [*Id.* ¶ 8.]

> (3) Software Link made the following misrepresentations in the actual written contract:

>> a.  that Software Link will assume responsibility for performing, managing, and verifying of the backup and restore processes for the Data.  A back-up tape or electronic copy of Data will be maintained offsite or in Software Link's disaster recovery site as determined by Software Link; and

b. that the data was confidential and proprietary to Austin Sports Center, and that Software Link's efforts to "protect and safeguard" Austin Sports Center's data would be "no less than what Software Link uses to safeguard its own confidential information." [*Id.* ¶ 10.]

(4) ASC entered into the Agreement in reliance on these misrepresentations. [*Id.* ¶ 11.]

For the same reasons as set forth in Section III(C)(i) above, these allegations more than satisfy the heightened pleading standard under Rule 9(b) for Plaintiffs' DTPA claim.[7]

### ii.    The DTPA imposes a duty on businesses not to make misrepresentations during the contract formation stage.

Software Link's next contention is that ASC's DTPA claims are barred because ASC's "allegations center on Software Link's purported failure to abide by the terms of the Agreement." [Dkt. 5 at 22.]  The DTPA, however, provides a cause of action for misleading a consumer into entering into an agreement.  "The duty not to make misrepresentations or to make certain disclosures during the contract formation stage is imposed by law independent of a contract and thus, is actionable under the DTPA." *Decision Control Sys. v. Personnel Cost Control, Inc.*, 787 S.W.2d 98, 100-101 (Tex. App.–Dallas 1990, no writ).  "The fact that damages are 'economic' does not mean they may not be damages for tort or violation of the DTPA." *Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 109 (Tex. App.–Houston [14th Dist.] 1996, writ denied).

Software Link tries to analogize this case to *Crawford v. Ace Sign Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996).  [Dkt. 5 at 22-23.]  The *Crawford* Court dismissed the plaintiff's DTPA claim because the defendants merely made statements that they would perform the contract, and the nonperformance of the contract *alone* caused the harm.  917 S.W.2d at 14.  *Crawford* is easily distinguishable from this case, where the DTPA harm flows from the misrepresentations

---

[7] Additionally, this petition was filed in state court, under Texas "notice pleading" standards.  Defendant thereafter removed the case to this Court. Should the Court determine that ASC had not met the pleading standards of Rule 9(b), Plaintiffs respectfully request that the Court grant them leave to amend.

made by Software Link during the contract negotiation that were then incorporated into the contract, including knowingly false statements regarding a nonexistent backup system. *See Dallas Fire Ins. Co. v. Tex. Contractors Sur. & Cas. Agency,* 128 S.W.3d 279, 294 (Tex. App.– Dallas 2004) (holding *Crawford* not applicable when DTPA claims were not based on lessor's "failure to perform duties imposed by the contract but on the independent duty imposed by law not to make knowing misrepresentations inducing a party into a contract"), *rev'd on other grounds*, 159 S.W.3d 895 (Tex. 2005); *Marinecorp Int'l, Ltd. v. Chopper Group, LLC*, No. 14-707, 2016 WL 1382168, at *4 (Tex. App.–Houston [1st Dist.] Apr. 7, 2016, pet. denied) (same, quoting *Dallas Fire* with approval).

Instead, this case is analogous to *Lone Star Ford, Inc. v. Hill*, 879 S.W.2d 116 (Tex. App.—Houston [14th Dist.] 1994, no writ). The plaintiff sued Lone Star for damages after it sold him a used car that had already been sold to someone else. 879 S.W.2d at 117-18. The plaintiff alleged that Lone Star's salesman induced him into the sale by failing to disclose that the previous buyer had not cancelled the purchase of the car. *Id*. at 119 (citing Tex. Bus. & Com. Code Ann. § 17.46(b)(23)). The *Lone Star* court upheld the plaintiff's recovery for violation of the DTPA because the evidence showed the defendant engaged in deceptive or misleading acts "in addition to any breach of contract claim." *Id*.

As in *Lone Star*, ASC alleges that Software Link failed to disclose facts that induced the plaintiff into the transaction, which is actionable as a DTPA claim. In addition, as cited and explained above, ASC's DTPA claim is also centered on knowingly false misrepresentations that Software Link made to ASC during the formation of the Agreement, which induced ASC to enter into the contract. This is precisely the type of claim contemplated by the DTPA.

**VI.    Conclusion**.

For the reasons stated herein, ASC has pleaded facts which, liberally construed in favor

16

of ASC and taken as true per Rule 12(b)(6) standards, entitle ASC to relief on each of its claims. ASC therefore respectfully requests that Defendants' Rule 12(b)(6) motion be denied.

In the event that the Court finds that ASC has failed to carry its burden under Rule 12(b)(6) or Rule 9(b) for any of the allegations in the Complaint, ASC further respectfully requests that the Court grant the motion without prejudice for leave to amend the complaint.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, TX 78701
(512) 480-5738
(512) 480-5838 (facsimile)

By:     /s/ Susan P. Burton
        Susan P. Burton
        State Bar No. 03479350
        sburton@gdhm.com
        Eric G. Behrens
        State Bar No. 02050700
        ebehrens@gdhm.com

ATTORNEYS FOR PLAINTIFFS JUNIOR VOLLEYBALL ASSOCIATION OF AUSTIN d/b/a AUSTIN SPORTS CENTER, and AUSTIN SPORTS CENTER, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2017, a true and correct copy of the Plaintiff's Response in Opposition to Defendant's Motion to Dismiss was served upon all counsel of record through the Court's CM/ECF filing system.

/s/ Susan P. Burton
Susan P. Burton