**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| JUNIOR VOLLEYBALL ASSOCIATION | § | |
| OF AUSTIN d/b/a/ AUSTIN SPORTS CENTER, | § | |
| and AUSTIN SPORTS CENTER, LLC, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 1:17-cv-00756 |
| | § | |
| SUMMIT HOSTING LLC, fka SOFTWARE | § | |
| LINK HOSTING, LLC, fka SOFTWARE | § | |
| LINK, INC., | § | |
| *Defendant*. | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
[DKT. 31] TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [DKT. 30]**

TO THE HONORABLE MARK LANE, JUDGE PRESIDING:

Plaintiffs Junior Volleyball Association of Austin d/b/a Austin Sports Center and Austin

Sports Center LLC (collectively "Austin Sports Center") respectfully file this response in

opposition to Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) [Dkt. 31].

I.      **Introduction**.

Austin Sports Center's contract with Defendant states that Defendant "shall not be liable

for any claims arising from … <u>loss of data</u>, corruption of data, … <u>unless</u> such damages are

caused by the sole gross negligence or malfeasance" of Defendant.  [Dkt. 30 at 24.][1]  Austin

Sports Center's amended complaint sets forth detailed facts to support each element of its claims

for such malfeasance and sole gross negligence, including reckless mistakes, misrepresentations,

and DTPA violations (which constitute "malfeasance" under Texas law).[2]

---

[1] Use of emphasis in quotations in this response is "emphasis added" unless otherwise stated.

[2] As briefed in the amended complaint and below, "malfeasance" encompasses reckless mistake, fraud, and violations of the Texas Deceptive Trade Practices Act ("DTPA").  [Dkt. 30 at 16-17, ¶¶ 37 & nn. 13-14.]  The parties' contract does not define "malfeasance," so as to alter the broad meaning given that phrase under Texas law.  Moreover, Defendant drafted the contract, and as set out in the complaint, any ambiguity in the contract language therefore should be construed against Defendant.  [*Id*. at 4, ¶ 13.]

The facts alleged in the amended complaint [Dkt. 30], taken as true for purposes of Rules 12(b)(6) and 9(b), form a basis for *contractual* liability (as acts of malfeasance and sole gross negligence which are expressly actionable under the parties' contract). The parties' contract expressly authorizes claims for "loss of data" in the event of such conduct.[3]

Defendant's motion should also be denied because Defendant's attempt to contractually limit its prospective liability for DTPA violations, fraud, or shared gross negligence, are void and unenforceable under Texas law. Defendant's limitation-of-liability clause appears to have been drafted without any thought toward compliance with Texas law, and by way of example, does not include *any* of the statutorily-required language for a valid waiver of DTPA liability under Tex. Bus. & Comm. Code § 17.42. Defendant's motion does not even attempt to address Austin Sports Center's pleading of invalidity of the limitation-of-liability clause as to those stand-alone statutory and tort claims.[4]

As a consequence, Austin Sports Center may maintain its contractual causes of action for malfeasance and sole gross negligence, and the resulting destruction of Austin Sports Center's data, pursuant to the carve-out language that Defendant drafted into the contract. Independent of any contractual limitation, Austin Sports Center may also assert independent causes of action for loss of its data based on Defendant's commission of gross negligence, DTPA violations, and fraudulent inducement, as stand-alone claims, because the limitation-of-liability clause is void as to those causes of action under Texas law.

---

[3] Defendant argues that Plaintiff's contract claim is merely a "restatement" and "repackage[ing]" of the stand-alone statutory and tort claims. [Dkt. 31 at 14, 22.] Instead, the amended complaint differentiates between stand-alone claims (as to which any limitation-of-liability clause is unenforceable), versus the contract claim based on overlapping facts relating to Defendant's "malfeasance" and "gross negligence." *Defendant* included "malfeasance" and "gross negligence" directly in the contract as a carve-out from the limitation-of-liability clause, making commission of those tortious acts *contractually* actionable as well.

[4] Plaintiffs pleaded and briefed the invalidity of any limitation of liability for DTPA violations, gross negligence, and fraud directly in the amended complaint. [Dkt. 30 at 10-11, ¶ 27 & nn. 9-10.]

As to each of those claims, the amended complaint provides the identities of specific individuals who engaged in actionable conduct, the specific misrepresentations and other actionable conduct in which they engaged, why they engaged in that conduct, the specific locations and circumstances where that conduct transpired, and the dates such conduct occurred. Those details exceed the pleading requirements of Rules 12(b)(6) and 9(b) as to all claims asserted. Plaintiff therefore respectfully urges the Court to deny Defendant's motion to dismiss.

## II. Defendant's misstatement regarding the prior hearing.

Defendant states in its motion that Austin Sports Center was "direct[ed]" to replead at the November 21, hearing, and that it has "now had two opportunities to attempt to plead its case." [Dkt. 31 at 10.] That argument is both inaccurate and misleading.

As this Court noted in its Report and Recommendation, Austin Sports Center volunteered to file an amended complaint, in light of the fact that its state-court petition was drafted in accordance with Texas rules and practice. [Dkt. 26 at 3.] The Court recommended that such leave to amend be granted [*id*.], and during the November 21, 2017 hearing, also asked the parties to research the Court's initial reactions to particular arguments had Defendant raised, including whether the conduct of the "subcontractor" to whom Defendant supposedly delegated its contractual duties is attributable to Defendant.

As outlined in the amended complaint, Defendant has since admitted that there was never any such "subcontractor" in the first place: *Defendant* destroyed Plaintiff's data, not some third party. Moreover, as briefed in the amended complaint, Defendant cannot insulate itself from liability by delegating its contractual duties to a third party, particularly since the contract *barred* Defendant from disclosing Plaintiff's data to others. [Dkt. 30 at 9-12, ¶¶ 25-29.]

## III. Applicable standards under Rule 12(b)(6) and Rule 9(b).

As Judge Yeakel noted, "Motions to dismiss under Rule 12(b)(6) 'are viewed with

disfavor and are rarely granted.'" *City of Pontiac Gen. Empl. Retirement Sys. v. Dell Inc.*, 2016 WL 6075540 (W.D. Tex. Sept. 16, 2016) (Yeakel, J.) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *Cleven v. Mid-America Apartment Communities, Inc*., 2017 WL 4276534 *2 (W.D. Tex. Sept. 26, 2017) (Pitman J.) (same).

In deciding a Rule 12(b)(6) motion, this Court noted that the "complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true." *Haynes v. Viking Drilling, LLC*, 2015 WL 11423655 *2 (W.D. Tex. Sept. 8, 2015) (Lane, J.), *adopted by* 2015 WL 11430841 (W.D. Tex. Oct. 2, 2015); *Kocurek v. Cuna Mut. Ins. Soc*., 459 Fed. Appx. 371, 373 (5th Cir. 2012) (same). For purposes of a Rule 12(b)(6) motion, the movant "'admits the facts alleged in the complaint.'" *Spear Mkting, Inc. v. BancorpSouth Bank*, 2013 WL 3297593 *2 (N.D. Tex. July 1, 2013) (quoting *TelPhonic Servs., Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1137 (5th Cir. 1992)); *Ramming v. U.S*., 281 F.3d 158, 161-62 (5th Cir. 2001) (a motion to dismiss "admits the facts alleged in the complaint").

The district court may not dismiss a complaint under rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Century Sur. Co. v. Blevins*, 799 F.3d 366, 371 (5th Cir. 2015).[5] Under the "strict standard" applied to motions to dismiss, the "'question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief.'" *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009) (quoting

---

[5] In Defendant's prior briefing, Defendant argued that the Fifth Circuit rejected this standard for Rule 12(b)(6) motions in *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). [Dkt. 17 at 2.] To the contrary, however, the Fifth Circuit continues to apply this same standard in decisions long since *Grubbs* was decided, holding that it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" before dismissal under Rule 12(b)(6) would be proper. *Blevins*, 799 F.3d at 371 (5th Cir. 2015); *Hollier v. Watson*, 605 Fed. Appx. 255, 257 (5th Cir. 2015) (per curiam) ("A district court may not dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.'").

*Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)); *Bias v. Tangipahoa Parish School Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) ("'Dismissal is improper if the allegations support relief on any possible theory,'" quoting *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012)).

**A.    Rule 9(b) does not apply to Plaintiff's breach of contract claim**.

At the hearing on November 21, 2017, Defendant argued that breach of contract actions which allege gross negligence or intentional torts as a component of the breach must satisfy Rule 9(b) pleading standards. It makes the same argument in its motion to dismiss.

Defendant's argument is incorrect as to the breach of contract actions, including breach of contract based on fraud, misrepresentation, and gross negligence. *See, e.g., International Bancshares Corp. v. Bancinsure, Inc.*, 2012 WL 12864343, at *2 (W.D. Tex. Aug. 30, 2012) ("Rule 9(b) does not apply to breach of contract cases, even if the contract provides for coverage of fraudulent acts."); *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012) (declining to apply Rule 9(b) to allegations of gross negligence, "Rather, gross negligence and breach of contract claims fall under Rule 8(a)"); *FDIC v. Williams*, 779 F. Supp. 63, 64 (N.D. Tex. 1991) (declining to apply 9(b) to allegations of gross negligence).[6]

As stated last year in *Santander Consumer USA, Inc. v. Homer Skelton Enterprises, Inc.*, 2017 WL 2558804, at *3 (N.D. Tex. June 13, 2017), "A careful review of Fifth Circuit law indicates that applying 9(b) to a breach of contract claim is inappropriate," even where the claim for breach made repeated reference to "misrepresentations." *See also Ricupito v. Indianapolis Life Ins. Co.*, 2010 WL 3855293 *3 (N.D. Tex. Sept. 30, 2010) (same, citing cases where Rule 9(b) was held inapplicable to contract actions based on "'false and misleading'" excuses and

---

[6] *See also Casares v. Agri-Placements Intern., Inc.*, 12 F.Supp.3d 956, 976 n. 5 (S.D. Tex. 2014) ("claims for breach of contract generally do not have to be pleaded with the specificity required by Rule 9(b)"); *Chau v. Aviva Life & Annuity Co.*, 2012 WL 6522150 at *3 n. 5 (N.D. Tex. Dec. 14, 2012) ("applying Rule 9(b) to a breach of contract claim is generally inappropriate").

where a transaction was induced "because of various misrepresentations").

**B.** **Austin Sports Center nevertheless has pleaded detailed facts in its amended complaint which satisfy Rule 9(b) pleading standards as to all claims**.

Nevertheless, because the amended complaint also includes stand-alone claims for fraudulent inducement, DTPA, and gross negligence, Plaintiff has pleaded facts to satisfy the "who, what, when, where, and how" particularity of Rule 9(b) as to all claims asserted.[7]

Even though "punctilious pleading detail is not required" by Rule 9(b),[8] the amended complaint includes the names of specific Defendant's personnel who made misrepresentations (*e.g.*, Stanley Kania, Brian Wilder), the specific misrepresentations they made and why, the specific dates when misrepresentations were made, the specific personnel at Austin Sports Center to whom those misrepresentations were communicated (*e.g.*, Tucker Koch, Scott Clouse), the means and locations by which those misrepresentations were conveyed to Austin Sports Center, and the reasons those statements constitute malfeasance, DTPA violations, fraudulent inducement, and gross negligence. [Dkt. 30 at 3-6 ¶¶ 9-17; 8-9 ¶¶ 22, 24; 13-21 ¶¶ 33-49.]

The detailed amended complaint meets Rule 9(b)'s parameters. As this Court previously noted, Rule 9(b) does not "reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud":

> "However, Defendants appear to suggest that, in analyzing a fraud complaint, each and every allegation must meet the precise requirements of Rule 9(b). This is going too far. 'Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not reflect a subscription to fact pleading and requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after

---

[7] *Compare Casares v. Agri-Placements Intern., Inc*., 12 F.Supp.3d 956, 972 (S.D. Tex. 2014) (Rule 9(b) generally does not apply to breach of contract claims, but "The Court does not need to decide to which of Plaintiffs' claims Rule 9(b) applies, however, because Plaintiffs' Second Amended Complaint satisfies the strictures of Rule 9(b).").

[8] *Shakeri v. ADT Sec. Serv., Inc*., 2014 WL 5780955 *2-3 (N.D. Tex. Nov. 6, 2014), *affirmed on other grounds*, 816 F.3d 283 (5th Cir. 2016). Defendant cites *Shakeri*, but that court held the complaint provided sufficient notice of fraud claims for purposes of Rule 9(b) even though it "lacks several factual details." *Id*. Plaintiff's amended complaint, by comparison, does supply each Rule 9(b) category detail.

*Twombly* must make relief plausible, not merely conceivable, when taken as true.' … Further, '[w]hat constitutes 'particularity' will necessarily differ with the facts of each case.'"

*Brown v. Harris*, 2013 WL 12291879 *4 (W.D. Tex. Jan. 17, 2013) (Lane, J.) (quoting *Grubbs*, 565 F.3d at 186 and *Benchmark Elec., Inc. v. J.M. Huber*, 343 F.3d 719, 724 (5th Cir. 2003)).

**IV.    Legally and factually incorrect assumptions in Defendant's motion to dismiss**.

Defendant ignores legal doctrines (briefed directly in the amended complaint) which contradict the arguments that Defendant makes in its motion. Those legal concepts are significant to the discussion below of Plaintiff's fact allegations in the amended complaint.

> **A.    Reckless mistake, fraud, and DTPA violations all constitute "malfeasance" under the carve-out language. That phrase is construed against Defendant**.

As set out in the amended complaint, Defendant was the sole drafter of the limitation-of-liability clause and its carve-out language. Austin Sports Center pleaded the drafter's rule, including applicable legal authority from this Court and the Fifth Circuit under which any ambiguity in the meaning of "malfeasance" consequently should be construed against Defendant. [Dkt. 30 at 4, ¶ 13 & n. 2.][9] Moreover, any inferences regarding the parties' contractual intent when they agreed to "malfeasance" as part of the carve-out language should likewise be construed in favor of Plaintiff, under the Rule 12(b)(6) and Rule 9(b) standards cited above.

Defendant's motion does not address the pleading of the drafter's rule, and it does not contest the amended complaint's discussion of the broad meaning accorded the phrase

---

[9] As this Court stated in *Longoria v. Delgado*, 2013 WL 4048546 *5 (W.D. Tex. Aug. 9, 2013) (Lane, J.), "If the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous. Under Texas law, a contract may be construed against its drafter after application of ordinary rules of construction leave reasonable doubt as to its interpretation." *See also Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 727 (5th Cir. 2017) ("If the policy language is ambiguous, then the court should construe the policy against the drafter, United, under the rule of *contra proferentem*."); *Service Steel Warehouse Co., L.P., v. McDonnel Grp., LLC*, 690 Fed. Appx. 869 (5th Cir. 2017) (per curiam) ("We agree with the district court that the bond language is ambiguous and should be construed against the drafters, Defendants-Appellees.").

"malfeasance" [Dkt. 30 at 16 & n. 13], which encompasses not only Defendant's commission of fraudulent inducement, but also Defendant's commissions of "reckless mistake," "wrongful" acts, and DTPA violations.  As the Fifth Circuit stated, noting the broad inclusion of "wrongful" acts within "malfeasance," "'Malfeasance' does not necessarily involve intent to deceive."[10]

When Defendant drafted the carve-out language of the contract, it did not include a definition for "malfeasance" so as to narrow the broad meaning of that phrase, and in any event, any ambiguity in its meaning is construed against Defendant under Rule 12(b)(6) and 9(b) standards, as well as the drafter's rule followed in Texas, by this Court, and by the Fifth Circuit.

**B.**    ***None* of the decisions Defendant cites involved the same carve-out language on which Austin Sports Center relies, and therefore are inapposite**.

Defendant argues that "it is well-settled that liability-limitations provisions in service contracts are valid and enforceable."  [Dkt. 5 at 12.]  The cases it cites do not support that overstatement, but more importantly, the contract provisions at issue in those cases are inapposite to the instant facts.

The parties' contract limits Defendant's liability for loss of Austin Sports Center's data "unless such damages are caused by the sole gross negligence or malfeasance of Software Link." [Dkt. 30 at 24.]  The provision relevant to Plaintiff's breach of contract claim is not the general limitation-of-liability clause, but instead the express *carve-out*, which unambiguously provides liability for "loss of data" caused by Defendant's "sole gross negligence or malfeasance."  [*Id.*]

In contrast, <u>none</u> of the contracts at issue in the decisions cited by Defendant have the same express carve-out language, and therefore are completely inapposite.[11]  Leaving aside the

---

[10] *NPR Invest., LLC ex rel. Roach v. U.S.*, 740 F.3d 998, 1007 & n. 30 (5th Cir. 2014).  Defendant's motion cites the same Black's Law Dictionary definition for malfeasance [Dkt. 31 at 13] that the Fifth Circuit cited in *NPR* when it concluded that "malfeasance" does not require an intent to deceive.

[11] *Vallance & Co. v. DeAnda*, 595 S.W.2d 587, 589 (Tex. App. – San Antonio 1980, no writ) (liquidated damages clause in burglar alarm contract, with no carve-out language); *Bray Int'l, Inc. v. Comput. Assoc.*

irrelevance of those decisions, Defendant also continues to inaccurately quote their holdings. For example, as in its prior briefing, Defendant quotes out of context an incomplete statement from *Kim v. Stanley Convergent Sec. Sols.*, 2013 WL 1715789, at *2 (N.D. Tex. Apr. 19, 2013):

| *The full sentence as quoted by Defendant:*[12] | *The actual full sentence from the decision*: |
|---|---|
| "'Texas Courts have repeatedly upheld liability limiting clauses.'" | "Texas Courts have repeatedly upheld liability limiting clauses **in alarm contracts**." |

The contract at issue in *Kim* likewise did not have the carve-out language at issue in this cause. In short, *Kim* and the other decisions Defendant cites have no relevance to the instant facts.

C. **Although Plaintiff pleads facts which fall within the express contractual allowance for "loss of data" based on malfeasance and sole gross negligence, the limitation-of-liability clause is void and unenforceable as to Plaintiff's stand-alone claims for DTPA violations, fraud, or gross negligence.**

The clauses at issue in the cases cited by Defendant are also inapposite to Austin Sports Center's stand-alone statutory and tort claims. None of the cases Defendant cites involved a clause which attempted to waive DTPA liability, or shared gross negligence, or intentional torts.

As pleaded and briefed in the amended complaint, Defendant is legally barred from limiting its prospective liability for fraud or shared gross negligence (not just "sole" gross negligence), and because it failed to follow the statutory requirements for a valid waiver of DTPA liability, it is barred from limiting statutory liability as well. Defendant appears to have drafted the limitation-of-liability clause without any awareness of legal requirements for validity.

---

*Int'l, Inc.*, 2005 WL 3371875 *4 (S.D. Tex. 2005) (limitation for "consequential damages" only, with no carve-out language); *Infowise Sol., Inc. v. Microstrategy, Inc.*, 2005 WL 2445436 *5 (N.D. Tex. 2005) (a limitation for "'incidental or consequential damages'" only, with no carve-out language); *Head v. U.S. Inspect. DFW, Inc.*, 159 S.W.3d 731, 747-48 (Tex. App. – Fort Worth 2005, pet. denied) (only a dollar limitation on liability, and no carve-out language); *Bergholtz v. Sw Bell Yellow Pages, Inc.*, 324 S.W.3d 195, 198-99 (Tex. App. – El Paso 2010, no pet.) (same); *Mickens v. Longhorn DFW Moving, Inc.*, 264 S.W. App. – Dallas 2008, pet. denied) (contract contained only a price-per-pound limitation on liability, and no carve-out language as in the instant lawsuit).

[12] As in its prior briefing [Dkt. 5 at 12], Defendant's cites to *Kim v. Stanley Convergent Sec. Sols., Inc.*, and *Moon Soo Kim v. Stanley Convergent Sec. Sols., Inc.*, are to the same reported case. [Dkt. 31 at 12.]

As a consequence, Austin Sports Center can assert each of those causes of action as stand-alone claims, even if they were not already allowed under the carve-out language which imposes liability for "malfeasance" and sole gross negligence.

Tellingly, Defendant does not attempt to address the portions of the amended complaint in which Plaintiff alleges the invalidity of the limitation-of-liability clause as to DTPA violations, fraud, and shared gross negligence. [Dkt. 30 at 10-11, ¶ 27.] It likewise makes no attempt to address the legal authority discussed in the complaint. [Dkt. 30 at 11 nn. 9-10.]

As briefed directly in the amended complaint, Tex. Bus. & Comm. Code § 17.42(a) provides that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is <u>unenforceable and void</u>" unless it meets the multiple requirements set out in Section 17.42. The statutory requirements for a valid waiver include use of paragraph set out in Section 17.42(c) (which requires the waiver to make explicit reference to the "Deceptive Trade Practices-Consumer Protection Act" as part of that paragraph), in "bold-face type."

<u>None</u> of those statutory requirements were included in the parties' contract, and therefore the limitation-of-liability clause is void as Plaintiff's DTPA claims. [Dkt. 30 at 24.]

Contractual limitations on liability for gross negligence, fraud, or recklessly caused harm, are also void as a matter of law. As the Texas Supreme Court reconfirmed,

> "We have indicated that pre-injury waivers of future liability for <u>gross negligence</u> are <u>void as against public policy</u>. Generally, a contractual provision 'exempting a party from tort liability for harm caused intentionally <u>or recklessly</u> is unenforceable on grounds of public policy.' We think the same may be said of contract liability. To conclude otherwise would incentivize wrongful conduct and damage contractual relations. This conclusion is supported by lower court decisions in Texas and court decisions in at least 28 American jurisdictions. We join this overwhelming consensus."

*Zachry Const. Corp. v. Port of Houston Auth. of Harris County*, 449 S.W.3d 98, 116 (Tex. 2014)

(Hecht, C.J.) (footnotes omitted).[13]   In short, Defendant's entire discussion about the limitation-of-liability clause as to Plaintiff's claims for gross negligence, fraudulent inducement, and DTPA violations, is inapplicable to those stand-alone claims as to which the clause is unenforceable.

## V. The amended complaint details the facts in support of each element of Plaintiff's claims, and exceeds the requirements of Rule 12(b)(6) and 9(b).  That is true as to the facts discussed in the motion to dismiss, as well as the facts Defendant ignores.

Rather than address the amended complaint as actually drafted, Defendant reimagines Austin Sports Center's allegations as simply working backwards from the "mere fact an unfortunate event" happened — i.e., Defendant's destruction of all of Plaintiff's payroll and other financial data — and ignoring the materially false representations that Defendant made not only in the contract, but also during negotiations when Defendant made specific detailed representations about the work it would perform and safeguards which it knew to be false.

### A. Specific fact allegations supporting the claims of fraudulent inducement and DTPA violations.

The elements for fraudulent inducement are that the defendant made a false material misrepresentation with knowledge that it was false when made or that the defendant asserted without knowledge of its truth or falsity, the defendant intended the misrepresentation to be acted on, the plaintiff relied on the misrepresentation, and the misrepresentation caused injury.[14]

Defendant states that Austin Sports Center has "attempted to buoy its claims by alleging the who, what, when, and where of [Defendant's] alleged misrepresentations" for Rule 9(b) purposes, but argues that Austin Sports Center did not allege the "why" of what Defendant

---

[13] This case law is briefed directly in the amended complaint [Dkt. 30 at ¶ 27 & n. 9], but ignored in Defendant's motion to dismiss.  In other words, leaving aside Defendant's recent admission that *it* lost all of Plaintiff's data (as opposed to some unidentified "subcontractor"), the clause does not insulate Defendant from liability for its own gross negligence even if liability were shared with a third party.

[14] *Pelco Constr. Co. v. Chambers County*, 495 S.W.3d 514, 527-28 (Tex. App. – Houston [1st Dist.] 2016, pet. denied).

"obtained thereby." [Dkt. 31 at 19-20.][15] It also argues that the amended complaint does not allege that Defendant acted with fraudulent intent. [Dkt. 31 at 21.] It makes those arguments jointly as to both the fraudulent inducement and DTPA allegations. [Dkt. 31 at 18-19.]

To the contrary, however, the amended complaint states Defendant intentionally and knowingly misrepresented the false information, and also specifies what benefit Defendant "obtained thereby" when it made the misrepresentations: landing the contract with Plaintiff.

First, as to "why" Defendant engaged in fraud and the benefit it obtained thereby, the amended complaint states that Defendant "made these false representations because it knew that Austin Sports Center required the backup server and those levels of safeguards in order to entrust Software Link with its extremely valuable financial data," it "knew that consumers like Austin Sports Center require those extraordinary levels of protection and warranties as a condition to entrusting their Data," and it consequently made those misrepresentations in order "to induce Austin Sports Center to enter into the Agreement." [Dkt. 30 at 15, 17, 18-19, ¶¶ 35, 40, 42, 46.]

Second, as to Defendant's fraudulent knowledge and intent, the amended complaint states that Defendant "knew it did not have the 30 days of backups that it stated it kept, that it did not have multiple servers that it monitored '7/24,' and that it did not verify multiple daily backups on such servers," that alternatively Defendant "acted with reckless disregard for the truth or falsity of the representations it made to Austin Sports Center," the complaint lists the false representations and alleges that Defendant made the "false representations because it knew that Austin Sports Center required the backup server and those levels of safeguards in order to entrust Software Link with its extremely valuable financial data," that Defendant's conduct in making listed misrepresentations evidences its "lack of good faith and intent to perform the services as

---

[15] *Villa Prints, Inc. v. Cecropia Sol., LLC*, 2016 WL 1090660 *3 (W.D. Tex. March 18, 2016) (Pitman, J.) ("The particularity requirement generally means that the pleader must set forth the 'who, what, when, where, and how' of the fraud alleged.").

represented, and to maintain the levels of protection that were promised" when it made the representations, and that it "failed to disclose information concerning its services which were known by Software Link at the time it entered into the Agreement which was intended to induce Austin Sports Center into the transaction." [Dkt. 30 at 17-18, ¶¶ 41-42, 49.] Plaintiff even included briefing regarding the inferences of fraudulent intent that can be drawn, directly in the amended complaint. [Dkt. 30 at 18 n. 15.][16]

While Rule 9(b) allows "intent," "knowledge," and other conditions of the mind to be pleaded "generally," the <u>concrete</u> nature of Defendant's knowingly false representations during negotiations that it stored 30 days of backups (when it knew it kept only 15 days), and that it "maintained an independent backup site to the primary server" for that 30 days of backups (which it did not), are among the specific representations that Defendant later admitted were false, and which Plaintiff pleaded were intentional and knowingly made. Plaintiff not only pleaded facts showing that Defendant made those representations intentionally and knowingly, but the misstated facts were peculiarly within Defendant's knowledge when it misrepresented them. [Dkt. 30 at 3-4, 8-9, 14-15, 17-21, ¶¶ 22, 24, 33-35, 40-42, 46-47, 49.]

Defendant also argues that Austin Sports Center simply assumes that Defendant's misrepresentations (including 30 days of backups, maintenance of those backups at an

---

[16] *See, e.g., Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394-95 (5th Cir. 2010) (noting that "a party's intent may be inferred by the party's subsequent acts following the representation," adding that a failure to perform is a "circumstance to be considered with other facts to establish intent." "Even 'slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.'"); *Elliott v. Whitten*, 2004 WL 2115420 *7 (Tex. App. - Houston [1st Dist.] Sept. 23, 2004, pet. denied) ("Because intent to defraud cannot normally be shown by direct proof, that intent must usually be proved by circumstantial evidence. Such circumstantial evidence may include the party's subsequent acts, even though the party's relevant intent is his intent at the time that he made the misrepresentation. For example, although the mere failure to perform a contract, standing alone, is not evidence of fraud, the subsequent failure to perform 'is a circumstance to be considered with other facts to establish intent .' 'Slight circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.' Similarly, a party's denial that he ever made the promise may be a factor showing no intent to perform when he made the promise.").

independent backup site to the primary server, and 7/24 monitoring) were false when made, based on the fact that Defendant admittedly did not have any of those safeguards in place a few years later when it destroyed all of Plaintiff's data. [Dkt. 31 at 21.] However, Defendant attempts to inject additional unpleaded facts, suggesting that its failure to monitor 7/24, its backup of only 15 days, and other material discrepancies from representations were "present-day company policies," hinting that those changes came into existence after 2012. [*Id*.] There is no pleading by *either* party to support that Defendant materially changed all of its safeguards at some unspecified time after it induced Plaintiff into the contract, or that Defendant simply forgot to tell Plaintiff that supposed new "present-day" policies rendered all of Defendant's prior representations about those safeguards false. Under Rules 9(b) and 12(b)(6), the "complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true" — not as-yet unpleaded defenses that Defendant might later raise. Moreover, as the Fifth Circuit stated, "a party's intent may be inferred by the party's subsequent acts following the representation," and the failure to perform is a "circumstance to be considered with other facts to establish intent." *Arete Partners, LP v. Gunnerman*, 594 F.3d 390, 394-95 (5th Cir. 2010).[17]

The amended complaint also identifies the who, what, when, and where details about the false representations. In addition to the knowingly false statements in the contract, for example, the amended complaint identifies Defendant's president and owner, Stanley Kania, and its Senior Network Engineer, Brian Wilder, as the persons who made the specific materially false representations about the services described in the contract during negotiations and Defendant's admissions about falsity (including specific false statements regarding "30 days" of backups, that

---

[17] *See also LetsDox Tech., LLC v. Temple*, 2012 WL 13028925 *3 (W.D. Tex. May 30, 2012) (Yeakel, J.) ("A party's intent may be inferred from subsequent acts after the representation is made. 'Slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.'") (citations omitted).

it "maintained an independent backup site to the primary server" for the 30 days of backups), the specific dates those representations were made (e.g., January 12, 2012, January 18, 2012, September 9-11, 2012), and the recipients of those communications, Austin Sports Center's Tucker Koch and Scott Clouse.   [*E.g.*, Dkt. 30 at 3-4, 6, 8-9, ¶¶ 10-11, 17, 22, 24.]

In contrast, the decisions that Defendant cites regarding fraudulent intent bear no relation to those pleaded facts, and also undermine its legal arguments.   [Dkt. 31 at 20-22, 23.] Defendant's reliance on *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299 (Tex. 2006), for example, is particularly misplaced.   The *Chapa* decision followed a full trial on the merits. Defendant quotes the portion of *Chapa* which states that mere breach is not evidence in itself of fraud, but it omits the *Chapa* court's next sentences:   "But while breach alone is no evidence of fraudulent intent, breach combined with 'slight circumstantial evidence' of fraud is enough to support a verdict for fraudulent inducement.   We believe Chapa met that standard here."   212 S.W.3d at 305.   The Court upheld the jury's fraud finding, noting that "we long ago abandoned the position that procuring a contract by fraud was simply another contract dispute."   *Id.*[18]

Defendant's reliance on *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003), is also misplaced.   Judge Garwood noted that "Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent."   The pleading in *Willard*, however, only contained a "'one-sentence allegation, devoid of any factual information that arguably did not even meet the pleading requirements of Federal Rule of Civil Procedure 8(a).'"   336 F.3d at 385.   The decision in *Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785 (N.D. Tex. 2009), is also inapposite. The *Berry* court found that subsequent "rule making by the IRS in 2004-2005" was not evidence

---

[18] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contract., Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (it "is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself.").

that an unrelated defendant knew, years earlier, in 2002-03 that the IRS would later issue those rules. 608 F.Supp.2d at 798. Defendant's reliance on the 1962 decision in *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962), is also misplaced. There, the claimant failed to offer evidence of fraud at trial: the claimant "offered testimony only on the theory that they did not know what they were signing" (which the court found meritless since he did not read the instrument), and but did not offer any evidence at trial on his theory of fraudulent misrepresentation. 363 S.W.2d at 250. The decision in *Hoffman v. AmericaHomeKey, Inc.*, 23 F.Supp.3d 734, 744 (N.D. Tex. 2014), where the pleading stated "nothing about the intent of the parties" at all, is also irrelevant.

Defendant also misplaces reliance on *Kevin M. Ehringer Enter., Inc. v. McData Serv. Corp.*, 646 F.3d 321 (5th Cir. 2011). Following the trial, the Fifth Circuit concluded that because "the 'best efforts' clause" at issue was "too indefinite and vague to provide a basis for enforcement, the claim for fraudulent inducement, as a matter of law, cannot rest on the alleged breach of this clause." 646 F.3d at 327. In contrast, Defendant's specific statements about "30 days" of backups, maintenance of that full month of backups on "an independent backup site to the primary server," its "7/24 monitoring," and other misrepresented facts are concrete. Finally, in *Yumilicious Franchise LLC v. Barrie*, 2015 WL 1856729 (N.D. Tex. Apr. 23, 2015), the court dismissed *both* the contract and fraud counterclaims because the defendant did not plead "the essential element of damages" and it was unclear "why they believe that they suffered damages." The court did not hold that maintenance of both contract and tort claims was impermissible, but instead the counterclaimant failed to allege damages as to *either* claim. 2015 WL 1856729 at *6. In sum, none of these decisions bears any relation to the facts alleged in the amended complaint.

Defendant's motion combines its attacks on Plaintiff's DTPA and fraudulent inducement claims. [Dkt. 31 at 18-24.] As briefed in the amended complaint, Defendant is liable for its violations of Tex. Bus. & Comm. §§ 17.46(b)(5), (7), (12), and 17.50(a)(1) of the DTPA "even

in the absence of any intent to misrepresent," because those sections do not require a showing of intent.[19]   In any event, the pleaded facts discussed above not only set forth Defendant's fraudulent intent in making the misrepresentations for purposes of the fraud claim, but also for purposes of the statutory violations under Tex. Bus. & Comm. §§ 17.46(b)(5), (7), (12), and (24).

Defendant also argues in its motion that the amended complaint repackages the breach of contract claim (under the carve-out language for "malfeasance") as stand-alone statutory and fraud claims.  [Dkt. 31 at 22-23.]  That argument has no bearing on whether the specific facts stated in the amended complaint are sufficiently pleaded, but in any event the premise of Defendant's argument that Plaintiff has simply "recast" breach of contract as a tort is incorrect. The amended complaint differentiates between the factual elements of its causes of action as stand-alone claims (as to which any limitation-of-liability provision is void and unenforceable), versus the breach of contract action based on overlapping facts relating to Defendant's commission of "malfeasance" and "gross negligence."  *Defendant itself* drafted "malfeasance" and "gross negligence" directly in the contract as a carve-out from the limitation of liability clause, making commission of those acts *contractually* actionable as well.  Likewise, "The duty not to make misrepresentations or to make certain disclosures during the contract formation stage is imposed by law independent of a contract and thus, is actionable under the DTPA."  *Decision Control Sys. v. Personnel Cost Control, Inc.*, 787 S.W.2d 98, 100-101 (Tex. App.–Dallas 1990, no writ).  In sum, Defendant's conduct is actionable on multiple, independent grounds.

---

[19] *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) ("A consumer is not required to prove intent to make a misrepresentation to recover under the DTPA."); *Tex. Real Estate Comm'n v. Asgari*, 402 S.W.3d 814, 819 (Tex. App.–San Antonio 2013, no pet.) (same);  *Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. App.–Corpus Christi 1995, writ denied) ("Intent to misrepresent, or knowledge that a representation is untrue, has never been an element of a DTPA 'laundry list' claim unless the specific provision requires intent."); *Coleman v. Dean*, 2015 WL 5156921 *5 n. 6 (Tex. App. – San Antonio Sept. 2, 2015) (Section 17.46 "laundry list" violations do not require intent, except in four subsections which explicitly reference intent as an element).

## B.    Specific fact allegations supporting gross negligence.

Gross negligence "requires a showing of two elements:  (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others."[20]

As quoted above, claims for gross negligence are not subject to Rule 9(b) pleading standards, and is "a condition of a person's mind that may be alleged generally under Rule 9(b)."[21]  Austin Sports Center's amended complaint nevertheless satisfies Rule 9(b) thresholds.

The amended complaint alleges that the reason that Defendant made detailed representations about 30 days of backups, independent storage, and other safeguards recited in the amended complaint [*e.g.*, Dkt. 30 at 15, ¶ 35] was because Defendant "knew those high levels of monitoring and protection are essential in order to fulfill its contractual promise to 'insure data is secure,' and without those levels of monitoring and security that there is an extreme degree of risk that data will be lost."  [*Id.*]  Objectively, the *very purpose* of doing a *full month's* worth of backups, monitoring, and security, for example, is because the omission to do so does involve "an extreme degree of risk that data will be lost" and unrecoverable.  [*Id.*][22]  As a supplier of cloud hosting, Defendant had subjective knowledge of that risk;  the fact that it made those *specific* representations is direct evidence of its subjective knowledge of the safeguards required, the fact that Plaintiff required them as a condition to entrusting its data, and the extreme

---

[20] *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014).

[21] *GE Capital Com., Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954 *11 (N.D. Tex. Dec. 31, 2009).

[22] Defendant does not suggest any other objective purpose behind a full month of backups, around-the-clock monitoring, and other safeguards that were represented, other than to ensure that Plaintiff's financial data is not lost.  In any event, the facts pleaded by Plaintiff need "not be more likely than other possibilities." *Mahoney v. Endo Health Sol., Inc.*, 2016 WL 395118590 *10 (S.D.N.Y. July 20, 2016).

risk posed to Plaintiff and its data by Defendant's omission of them.

The amended complaint also details Defendant's conscious indifference to those risks, making representations about its safeguards which it knew were simply false. "The fact that Software Link did not keep the 30 days of backups that it represented it kept, and that it did not even determine that the Data was lost for 13 days (in contrast to its representations that it provided around-the-clock monitoring and that it verified its multiple daily backups), by themselves evidence its conscious indifference in the face of the extreme risk. In light of Software Link's claim that it kept 15 days of backups, its failure to act promptly on September 30, 2017 to preserve what should have been two days of uncorrupted Data further evidences its conscious indifference." [Dkt. 30 at 15, ¶ 35.]

Defendant argues that Austin Sports Center circularly reasons that there "must have been" gross negligence because "the *provisions* in the Agreement … show an extreme risk and conscious indifference." [Dkt. 31 at 16.] That argument mischaracterizes Plaintiff's pleading. The contractual recitations (as well as oral representations made during negotiations) help *evidence* both objectively from Defendant's standpoint, as well as subjectively, Defendant's *knowledge* of the levels of safeguards required in order to avoid the "extreme risk" of data loss.

While Defendant tries to characterize the total loss of Plaintiff's data differently — as just a "mere fact" and an "unfortunate event" [Dkt. 31 at 17] — Defendant's acts and omissions in falsely representing high levels of specific safeguards, knowing such safeguards did not exist, and failing to implement and follow those safeguards, involved an "extreme degree" of risk considering the probability and "magnitude of the harm" that the total loss of Austin Sports Center's data would inflict.

**C.     The fact allegations also support the contractual claim for "malfeasance."**

As cited above, Defendant chose "malfeasance" when it drafted the contract, and did not

define the phrase so as to alter or lessen the breadth given that that term under law. As quoted above and briefed directly in the amended complaint, malfeasance encompasses "reckless mistake," "wrongful" acts, and DTPA violations, and as the Fifth Circuit notes, intent to deceive is not a required showing. [Dkt. 30 at 16 & n. 13.] Plaintiff pleaded that "facts stated above also establish that [Defendant] breached the Agreement through the commission of reckless mistakes, which resulted in the destruction" of Plaintiff's data. [Dkt. 30 at 16 ¶ 37.] The detailed facts pleaded in in the amended complaint in support of fraudulent inducement, DTPA, and gross negligence (and discussed above) further support a claim of "malfeasance" based on Defendant's commission of reckless mistakes in destroying all of Plaintiff's payroll and other data. It is liable for "loss of data" under the express terms of the contract's carve-out language for "malfeasance."

### D. The amended complaint states a claim for attorneys' fees.

Austin Sports Center is entitled to recover its attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.* (claims on an "oral or written contract) and Tex. Bus. & Comm. Code § 17.50(d) (DTPA). Defendant admits that Plaintiff "makes a claim for attorneys' fees and costs" under those sections, but then argues that Plaintiff did *not* state a claim for such fees and costs because Plaintiff's contract action "fails as a matter of law." [Dkt. 31 at 24.] Defendant does not allege any defect in the factual pleading of the attorneys' fee claim. For the same reasons that Plaintiff has pleaded sufficient facts to support its claim under contract, it states a claim for attorneys' fees and costs.

Plaintiff respectfully requests that Defendants' motion to dismiss be denied. The amended complaint states facts which, liberally construed in Plaintiff's favor and taken as true, meet Rule 12(b)(6) and 9(b) standards. In the event that the Court finds that Plaintif has failed to carry its burden under Rule 12(b)(6) or Rule 9(b) for any of the allegations, Plaintiff further respectfully requests that the Court grant the motion without prejudice for leave to amend.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, TX 78701
(512) 480-5738
(512) 480-5838 (facsimile)

By:     /s/ Susan P. Burton
        Susan P. Burton
        State Bar No. 03479350
        sburton@gdhm.com
        Eric G. Behrens
        State Bar No. 02050700
        ebehrens@gdhm.com

ATTORNEYS FOR PLAINTIFFS JUNIOR
VOLLEYBALL ASSOCIATION OF AUSTIN d/b/a
AUSTIN SPORTS CENTER, and AUSTIN SPORTS
CENTER, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2018, a true and correct copy of this Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Amended Complaint was served upon all counsel of record through the Court's CM/ECF filing system.

        /s/ Susan P. Burton
        Susan P. Burton